893 F.2d 1336
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert S. WATSON; Jerry M. Prather, Plaintiffs-Appellants,
Cross-Appellees,
Arco Engineering, Inc., Plaintiff,
v.
John W. SHAFFNER, Defendant-Appellee, Cross-Appellant.
 Nos. 88-6409, 89-5007.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1990.
 
 On Appeal from the United States District Court for the Western District of Kentucky, 86-00815, Allen, D.J.
 Before KRUPANSKY and RYAN, Circuit Judges, and JAMES P. CHURCHILL, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs Robert S. Watson and Jerry M. Prather appeal the trial court's award of nominal damages of $1 to each plaintiff against defendant John W. Shaffner in this action, brought pursuant to 28 U.S.C. Sec. 1332, for breach of a contract for the sale of shares of a corporation's stock.
 
 
 2
 Defendant John W. Shaffner cross-appeals the court's finding that the contract for the sale of the securities was an isolated non-issuer transaction and exempt from compliance with the state of Kentucky's Blue Sky Law, Ky.Rev.Stat.Ann. Sec. 292.310(9) and Sec. 292.410(1)(a) (Baldwin 1983).
 
 
 3
 We conclude that the district court did not clearly err in awarding plaintiffs nominal damages, and we affirm.
 
 I.
 
 4
 Plaintiffs are the officers and sole shareholders of Arco Engineering Inc. (Arco), a closely-held Kentucky corporation. Arco is a manufacturers' sales representative firm. On May 13, 1986, plaintiffs and defendant entered into a stock purchase agreement whereby each plaintiff would sell half of his Arco stock to defendant for $52,500 with $10,000 paid to each plaintiff at closing and the balance to be in the form of promissory notes secured by the stock purchased. Defendant would thereby become a one-third shareholder in Arco. The agreement also provided that defendant would become an employee of Arco. The deal fell through when the defendant refused to abide by the agreement because it failed to include a buy back provision in case defendant chose to leave Arco.
 
 
 5
 Plaintiffs filed suit for breach of contract and requested damages of $105,000, the total purchase price of the stock. The court denied defendant's motion for summary judgment but held that specific performance was not an appropriate remedy since the employment agreement was related to the stock purchase agreement.
 
 
 6
 Thereafter, the court issued a memorandum opinion regarding the proper measure of damages. The court found that although the employment contract was "interwoven" with the stock purchase agreement, a sale for securities existed and, under Ky.Rev.Stat.Ann. Sec. 355.8-107(2)(c), plaintiffs may be able to recover the contract price. The court stated that, at trial, plaintiffs must show that there is no readily available market for the shares or that efforts to recover the contract price at resale are unduly burdensome. The court concluded, however, that if defendant countered plaintiffs' "no readily available market" and "unduly burdensome resale" arguments, then the court would rely upon Sec. 355.2-708(1) to award the seller the difference between the market price and the contract price at the time the contract was made.
 
 
 7
 Following a non-jury trial, the court held that a contract for the sale of securities existed and the defendant breached its terms but awarded plaintiffs only nominal damages. The court concluded that an award of $105,000 would be a windfall since plaintiffs retain the same interest in the company and the company's value is at least equal to its value at the time the stock purchase agreement was executed. The court noted that plaintiffs did not suffer any pecuniary loss since they remain free to find a purchaser who can invest in the corporation and who has a valuable talent to offer Arco.
 
 
 8
 Plaintiffs appeal, contending that the trial court made insufficient findings of fact or, alternatively, that the findings made were clearly erroneous. Plaintiffs seek recovery of the contract price.
 
 II.
 
 9
 A. Findings of Fact and the Award of Nominal Damages.
 
 
 10
 Federal Rule of Civil Procedure 52(a) provides, in pertinent part:
 
 
 11
 In all actions tried upon the facts without a jury ..., the court shall find the facts specifically and state separately its conclusions of law thereon,.... Findings of fact, ..., shall not be set aside unless clearly erroneous....
 
 
 12
 A finding is clearly erroneous when, based on the entire evidence, the reviewing court is left with a definite and firm conviction that a mistake has been made. Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988).
 
 
 13
 Section 355.8-107(2)(c) provides that the seller may recover the price due under the contract for the sale of securities when the buyer fails to pay the price if:
 
 
 14
 [E]fforts at their resale would be unduly burdensome or if there is no readily available market for their resale.
 
 
 15
 Plaintiffs contend there is no readily available market because the stock is closely-held and not registered or traded on any stock market and any attempts to sell the stock to the general public would require compliance with burdensome state and federal securities laws. Plaintiffs contend that the resale of the stock would be unduly burdensome for the same reasons.
 
 The court found that:
 
 16
 While the plaintiffs offered testimony to the effect that it would be very difficult to interest members of the public in purchasing stock in a closely held corporation where the stock purchased was a minority interest, the testimony did not go specifically to the situation present in this case where defendant would be an owner of an equal amount of the stock with two other stockholders not related by blood or marriage and none of whom owned more stock than defendant would have. Also, he did not address the question of what effect, if any, the employment agreement and the opportunity to participate in equal shares and bonuses would have on a potential purchaser.
 
 
 17
 The court rejected the notion that plaintiffs were entitled to the contract price simply because the stock was that of a closely-held corporation. The court noted that defendant introduced evidence that plaintiffs received seventy responses to their advertisement soliciting inquiries from persons who might wish to become part-owners of Arco; however, defendant admitted that finding another minority stockholder who could make the company more profitable was not easy. Defendant also offered undisputed testimony that Arco's net worth was $418,000 and thus, the market value of defendant's shares exceeded the amount defendant contracted to pay for the shares. The court concluded that an award of the contract price would be a windfall since plaintiffs were not damaged by the breach of contract.
 
 
 18
 As plaintiffs so aptly point out, Sec. 355.1-106(1) states:
 
 
 19
 The remedies provided by this chapter shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had....
 
 
 20
 The comments suggest that this section was intended, in part, to "make it clear that compensatory damages are limited to compensation." "Remedial provisions do not include consequential or penal damages; and this Chapter makes it clear that damages must be minimized." Kentucky Commentary to Ky.Rev.Stat.Ann. Sec. 355.1-106(1) (Baldwin 1983).
 
 
 21
 We cannot conclude the trial court clearly erred in finding plaintiffs were entitled to nominal damages only since allowing plaintiffs to recover the contract price would do more than compensate plaintiffs for the breach of contract. The recovery of costs and nominal damages is in accord with the purpose set forth in Sec. 355.1-106(1).
 
 
 22
 B. Stock Purchase Agreement as a Non-issuer Transaction
 
 
 23
 Defendant contends that the stock purchase agreement was an "issuer" transaction since Arco would benefit from defendant's employment, and thus, the sale of securities was subject to state securities laws requiring that plaintiffs register the stock sale or file and receive an exemption from registration. Ky.Rev.Stat.Ann. Sec. 292.340 (Baldwin 1983).
 
 
 24
 Defendant does not adequately address this issue on appeal. He cites no authority for his argument that employment with the issuer provides a benefit to the issuer preventing the application of the non-issuer exemption to state security filing requirements, Ky.Rev.Stat.Ann. Sec. 292.410(1)(a), despite the fact that the district court found to the contrary and held:
 
 
 25
 Neither do we believe that the incidental benefit the corporation might derive from having defendant in its employ is sufficient, standing alone, to constitute a "direct or indirect benenfit" which would transform the agreement into an issuer transaction.
 
 
 26
 See Ky.Rev.Stat.Ann. Sec. 292.310(9) (Baldwin 1983).
 
 
 27
 Moreover, defendant fails to respond to the trial court's determination that even if the stock purchase agreement were an issuer transaction, the contract remained enforceable since the purpose behind the state's securities laws was not deliberately thwarted.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable James P. Churchill, Chief Judge of the United States District Court for the Eastern District of Michigan, sitting by designation