In re Tina Marie HOUSEWORTH,
Debtor.

Tina Marie HOUSEWORTH, Plaintiff,

v.

THREE RIVERS FEDERAL CREDIT
UNION, Defendant.

Bankruptcy No. 94–3046.
Related No. 94–30207–S.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Dec. 15, 1994.

Scott R. Gordon, Van Wert, OH, for plaintiff.

V. Robert Candiello, Toledo, OH, for defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon arguments by counsel for both parties presented in letters filed with the Court. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Defendant shall return all funds withdrawn from the Plaintiff's account with Defendant from the date on which the Debtor's bankruptcy petition was filed.

### FACTS

At issue in this case are various automatic withdrawals by Defendant Three Rivers Credit Union from Plaintiff/Debtor's credit union account. Plaintiff had authorized Defendant to make withdrawals from her credit union account as payments on the debt owed to Defendant. Part of the debt owed Three Rivers regarded a 1991 Ford Ranger, to which Defendant holds a security interest.

It appears that Plaintiff initiated the automatic withdrawals shortly before filing bankruptcy under Chapter 7 of the Bankruptcy Code on February 4, 1994. Withdrawals were made from the account of Plaintiff between February 8, 1994 and March 15, 1994 even though Defendant received notice of Plaintiff's filing bankruptcy on or about February 17, 1994. These withdrawals total approximately Four Hundred Twenty Dollars ($420.00).

Defendant argues that it continued to make withdrawals based on statements made by Plaintiff's attorney that she wanted to reaffirm the pre-petition debt. Indeed, a letter was written from Plaintiff's attorney to Defendant's attorney on February 21, 1994, wherein the Plaintiff stated her willingness to reaffirm. No mention was made in this letter of the automatic withdrawals taking place. On March 11, 1994, Plaintiff filed a Complaint initiating the present case.

Plaintiff asks for the return of the funds withdrawn after the bankruptcy filing. Plaintiff also asks that Plaintiffs attorney's fees incurred in pursuit this matter.

### LAW

**11 U.S.C. § 362. Automatic Stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

**11 U.S.C. § 524. Effect of Discharge**

(f) Nothing contained in (c) or (d) of this section prevents a debtor from voluntarily repaying any debt.

### DISCUSSION

The issues presented in this case are (1) whether Defendant violated the automatic stay provisions of the Bankruptcy Code by not terminating the automatic withdrawals from Plaintiff's account after the filing of the bankruptcy petition, and if so, (2) whether Plaintiff is entitled to attorney's fees allegedly incurred as a result of the violation. As this is a case under Title 11, this is a core proceeding. 28 U.S.C. § 157.

Section 362(h) of the Bankruptcy Code provides that when a creditor willfully violates the automatic stay, the injured party may recover actual damages, including costs and attorney fees. Actions taken in violation of the stay imposed under § 362 are invalid and voidable and shall be avoided absent limited equitable circumstances. *Easley v. Pettibone Michigan Corporation,* 990 F.2d

905 (6th Cir.1993). The protection of the stay is unavailable only when the debtor unreasonably .withholds notice of the stay, prejudicing the debtor's ability to raise the stay as a defense; or when the debtor attempts to use the stay unfairly as a shield to avoid an unfavorable result. *Id.* at 911.

■ The effect of the automatic stay on automatic withdrawal accounts was addressed in the Sixth Circuit in *O'Neil v. Beneficial of Tennessee, Inc.,* 165 B.R. 859 (Bankr.M.D.Tenn.1994). The facts of *O'Neil* are very similar to those of the case herein. In *O'Neil,* the debtors purchased an automobile with an installment loan and arranged to have the bank make automatic withdrawals on her account. After the debtors filed for bankruptcy protection, the defendant bank continued to make automatic withdrawals from the debtor's account even after it had received notice of the debtor's bankruptcy. The bank argued that it did not violate the automatic stay because it took no direct action against debtors to collect the debt. *Id.* at 861. Rather, the bank argued that it advertently received an automatic loan payment as a consequence of a pre-petition loan transaction with the debtors, and the debtors failed to instruct the bank to stop the automatic payments after filing bankruptcy. *Id.* Thus, the bank argued, the debtors had made a voluntary payment under § 524(f). *Id.*

The *O'Neil* Court disagreed. The Court noted that courts in other jurisdictions have consistently extended the scope of the automatic stay to prohibit transactions in which a creditor received a post-petition automatic loan payment to pay a pre-petition debt, unless the debtor actually demonstrated his or her willingness to voluntarily have post-petition earnings applied to a dischargeable pre-petition debt. *Id.* Because the bank had not shown that the debtor had made any "positive indication" to make voluntary payments, the Court held that the bank had violated the automatic stay. *Id.*

■ In the case at bar, the Defendant argues that the Plaintiff's attorney had made several attempts to voluntarily reassume the pre-petition debt. Indeed, a letter dated February 21, 1994, was written by the Plaintiff's attorney to the Defendant's attorney indicating Plaintiff's willingness to reaffirm. Though this letter was received by the Defendant after two post-petition withdrawals were made on Plaintiff's account, no withdrawals were made after notice was received by the Defendant on February 17, 1994, until after the letter from Plaintiff's attorney was received. The Defendant then continued to withdraw payments from Plaintiff's account. For reasons that are a mystery to this Court, the Plaintiff's attorney and the Defendant's attorney seem to have been unable to come to a peaceful resolution of the matter before the reaffirmation agreement could be signed.

This Court is not convinced that the indications given by the Plaintiff in this case would amount to the level of "positive indication" that would excuse the Defendant for making unwarranted withdrawals on the Plaintiff's account when the reaffirmation agreement was. not consummated and no express authorization was asked for or given. Indeed, even if authorization were expressly given, the withdrawals could still be voided as a preference unless the funds which were withdrawn came from debtor's post-petition earnings. 11 U.S.C. § 547. Nevertheless, the Defendant continued to make three withdrawals on Plaintiff's account, the last of which was on March 15, 1994, three weeks after receiving Plaintiff's letter. The Court finds it of little consequence or excuse that Defendant's attorney was on vacation during part of this time. Thus, the Court finds that Defendant did violate the automatic stay. Accordingly, all funds received by the Defendant from the date of the filing of the bankruptcy petition should be returned to the Plaintiff.

■ This Court does consider, however, the Plaintiff's letter proposing reaffirmation for the purpose of mitigating the damages against Defendant. Plaintiff has asked to recover attorney's fees incurred as a result of Defendant's violation. Under 11 U.S.C. § 362(h), an individual injured by any willful violation of the stay shall recover actual damages, including costs and attorney's fees. A Bankruptcy Court's decision regarding the amount of damages is a factual finding and

will not be disturbed unless the finding is clearly erroneous. *Archer v. Macomb County Bank*, 853 F.2d 497 (6th Cir.1988); *Beair v. Polhamus*, 168 B.R. 633 (Bankr.N.D.Ohio 1994).

■ .This Court will decline to award attorney's fees in this case. The letter written by the Plaintiff's attorney which sought reaffirmation made no mention of the automatic withdrawals that were ongoing, even though these withdraws were purportedly of great concern to the Plaintiff. Though this Court does not find that this excuses the Defendant's actions, Plaintiff is unable to come forward with any letter that was written to the Defendant at any time that indicates anything other than a willingness to continue to repay the loan. Plaintiff's attorney instead purports that protests were made during phone conversations with the Defendant's attorney, of which there is no record. Finally, this Court is not unmindful that Plaintiff had arranged the automatic withdraws days before the filing of her bankruptcy petition. This also serves to mitigate the damages against the Defendant.

*Smith v. First America Bank*, 876 F.2d 524 (6th Cir.1989) is illustrative of the law in this area. In *Smith*, the bank unknowingly sold a debtor's repossessed car after debtor had filed for Chapter 13 relief. On the day of filing of the petition, the debtor had obtained a restraining order and sent a copy via first class mail to the bank. The bank did not receive the notice, however, until after the sale. The debtor then sought the proceeds of the sale so that the debtor could purchase replacement transportation. The debtor did not seek attorney fees or other costs. The Bankruptcy Court denied the debtor's motion and assigned costs to the debtor.

On appeal to the Sixth Circuit, the bank cited *In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir.1982), for the proposition that a debtor cannot recover against a creditor who acted in violation of the automatic stay where the debtor has knowingly remained "stealthily silent" and allowed the creditor to commit such violation. Thus, the bank argued that the debtor should not recover the proceeds of the sale because debtor had remained "stealthily silent" while the bank unknowingly violated the automatic stay.

The *Smith v. First America Bank* Court declined to apply the "stealthily silent" rule, and instead held that *Smith Corset Shops* was inapposite, finding that debtor's actions were, "better characterized as careless than stealthy." 876 F.2d at 526. Of particular importance to the Court were the damages sought by the debtor. The Court noted:

> Moreover, unlike the debtor in *Smith [Corset Shops ]*, [debtor] does not seek to exploit the creditor's ignorance for financial gain. She only seeks to recover the proceeds from the sale of the vehicle to provide substitute transportation essential to the success of her Plan. She will be in no better position than she would have been had the Bank learned of the stay prior to sale. *Id.*

The Court then held that the bank should turn over the proceeds of the sale to the debtor, but no attorney's fees were asked for or given to the debtor, and the debtor was likewise not to pay the bank's costs. *Id.*

This Court feels a similar outcome is warranted in this case. Though the Defendant's actions violated the automatic stay, Plaintiff was not without the ability to have prevented the Defendant from misunderstanding either the Plaintiff's intentions in this case, or Defendant's obligations under the Code had Plaintiff's intentions been clear. Unlike the debtor in *Smith v. First America Bank*, Plaintiff seeks not only the return of the inappropriately withheld funds, but also seeks to gain from Defendant's mistake to which she contributed to in part. Allowing attorney's fees in such a situation would encourage debtor's attorneys to feign intentions to reaffirm to inattentive creditors, then seek attorney's fees for their actions. Thus, this Court will exercise its equitable powers and refuse the award of attorney's fees in this case.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that Defendant Three Rivers Credit Union return all funds withdrawn from Plaintiff's account from the date of the filing of the Bankruptcy petition.