In re Charles Andrew SEAL and Terry Lynn Seal, Debtors.

Bankruptcy No. GK 93–80366.

United States Bankruptcy Court, W.D. Michigan.

Feb. 16, 1996.

444

Roger J. Bus, Kalamazoo, MI, for Charles Andrew Seal and Terry Lynn Seal.

David Rosenberg, in pro. per.

Alexander C. Lipsey, Kalamazoo, MI, for chapter 13 trustee.

---

1. The Bankruptcy Code, as amended, is set forth in 11 U.S.C. §§ 101–1330. Unless otherwise not-

*OPINION RE ESCROW FUNDS MOTION AND AMENDED DAMAGES MOTION*

JAMES D. GREGG, Bankruptcy Judge.

## I. ISSUE

May the debtors collect damages from an alleged secured creditor, resulting from his violation of the automatic stay and contemptuous disregard of court orders by offsetting damages awarded to the debtors against the creditor's remaining chapter 13 allowed claim distributions?

## II. JURISDICTION

■ The court has jurisdiction over these contested matters. 28 U.S.C. § 1334 and § 157(b)(1). These matters are core proceedings in accordance with 28 U.S.C. § 157(b)(2)(A), (K), (L) and (O). "Civil contempt proceedings arising out of core matters are themselves core matters." *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 448 (10th Cir.1990) (collecting cases). This opinion constitutes the court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

## III. FACTS AND PROCEDURAL HISTORY

On January 26, 1993, Charles Andrew Seal and Terry Lynn Seal, "Debtors", filed their joint voluntary petition under chapter 13 of the Bankruptcy Code.[1] In their schedules filed with this court, the Debtors listed a debt owed to David Rosenberg, "Rosenberg", in the amount of $4,000.00; the Debtors also listed Rosenberg's indebtedness as secured by his interest in a 1987 Ford Aerostar van, the "vehicle". (Schedule D; Docket No. 2.)

The Debtors' original plan treated all secured creditors, including Rosenberg, as follows:

2. With respect to each allowed secured claim (unless creditor has accepted different treatment of its claim or the

---

ed, all future statutory references are to title 11 of the United States Code.

Debtor proposes to surrender the property securing the claim):

(a) the holder of each such claim shall retain the lien securing such claim, and

(b) the holder of such claim shall be paid in such amounts as to have a value, as of the effective date of the plan, that is not less than the allowed amount of such claim (as that amount may be finally determined).

The Debtor(s) desire that their secured creditors be paid contract rate interest up to (sic) the value of the collateral.

(Docket No. 2.)

On February 11, 1993, a Notice of Commencement of Case Under Chapter 13 of Bankruptcy Code, Meeting of Creditors and Fixing of Dates was served upon parties in interest. That notice stated, in part, "David Rosenberg is secured to $4,000.00 with interest at the contract rate and the balance unsecured." Rosenberg was properly served this notice at his address of record.

On April 8, 1993, a confirmation hearing regarding the Debtors' proposed chapter 13 plan took place. No party in interest, including Rosenberg, objected to confirmation and the plan was confirmed. The court signed the Order Confirming Plan and Approving Attorney's Fees on April 8, 1993. (Docket No. 13.) The confirmed plan provided for proper treatment of all secured creditors, and mandated a 100% distribution to unsecured creditors holding allowed claims. On June 23, 1993, the court signed an Order Allowing Claims. Rosenberg's claim was allowed as a secured claim in the amount of $4,000.00. (Docket No. 17.)

On July 19, 1993, Rosenberg filed a "Motion for Relief". He requested that the automatic stay be modified so he could repossess and sell the vehicle. A preliminary hearing took place on August 12, 1993, herein "Transcript 8–12–93". At the preliminary relief from stay hearing, the court first learned that Rosenberg had not filed a proof of claim. However, the Debtors timely filed a so-called "protective claim" on Rosenberg's behalf under Bankruptcy Rule 3004.[2] Although Rosenberg received notice that a claim was filed on his behalf, he did not file a superseding claim under Bankruptcy Rule 3004.[3] At the preliminary hearing, the evidence demonstrated that Rosenberg had not yet given the Debtors a title to the vehicle as required by applicable Michigan law. (Trans. 8–12–93, pp. 5–9; 12.) Because contested facts existed, Rosenberg's relief from stay motion was continued to the final hearing.

On September 9, 1993, the final hearing took place, herein "Transcript 9–9–93". Rosenberg alleged the Debtors failed to complete the purchase of the vehicle because they: (1) did not make the requisite down payment, (2) failed to pay sales tax, and (3) failed to pay the requisite title transfer fee. He also asserted the Debtors did not have insurance on the vehicle and they acted fraudulently in connection with the vehicle sale transaction. Rosenberg basically concluded that he had no obligation to provide the Debtors with a title to the vehicle and that he owned it. Rosenberg introduced no documents to support his oral assertions.

Terry Seal, one of the Debtors, "Seal", testified that she purchased the vehicle from Rosenberg on October 17, 1992. The purchase price was $3,950.00. Additional charges were sales tax of $158.00 and the title transfer fee of $21.00. (Trans. 9–9–93, p. 27.) She remitted $800.00 to pay the sales tax, the title transfer fee, and a down payment on the purchase price. Her testimony was corroborated by a bill of sale given to her by Rosenberg. (Debtors' Exh. 1.) After the initial payment, the balance owed to purchase the vehicle was $3,329.00 (Trans. 9–9–93, p. 35.) Rosenberg gave possession of the vehicle to Seal. She understood Rosenberg

---

**2.** The court takes judicial notice of the claims in its file. On March 12, 1993, the Debtors filed a fully secured claim for Rosenberg in the amount of $4,000.00. Subsequently, on September 14, 1993, after evidence at the relief from stay final hearing, the claim was amended to $2,929.00 based upon the court's findings of fact at that hearing. Fed.R.Evid. 201.

**3.** At the preliminary hearing, Rosenberg was advised by the court that he was entitled to file a proof of claim. (Trans. 8–12–93, pp. 7–8.) Nevertheless, Rosenberg failed to file any subsequent proof of claim.

would arrange transfer of the vehicle title so the requisite registration certificate and license plates could be obtained. (Trans. 9–9–93, pp. 24–25, 28, 30–31.)

Rosenberg gave the Debtors temporary registration certificates on numerous occasions, including October 17, 1992; December 16, 1992; and February 2, 1993. (Trans. 9–9–93, pp. 26, 32; Debtors' Exhs. 5, 6, and 7.) When repeatedly questioned by Seal about the title and registration certificate for the vehicle, Rosenberg then first demanded the Debtors pay the title transfer fee and the sales tax that had already been paid. (Trans. 9–9–93, p. 26.) Notwithstanding the Debtors' requests for title documentation, as of the relief from stay final hearing, the Debtors still had not received a registration certificate or a vehicle title. (Trans. 9–9–93, p. 29.)

Prior to the chapter 13 filing, the Debtors made two additional payments to Rosenberg in the amount of $200.00 each. (Trans. 9–9–93, p. 25.) As of the January 26, 1993 filing date, the balance owed to Rosenberg was $2,929.00 (exclusive of any accrued interest on the indebtedness at the contract rate of ten percent per annum). Finally, in contradiction of Rosenberg's assertion, the Debtors demonstrated the vehicle had been, and then was, insured against damage. (Trans. 9–9–93, p. 27; Debtors' Exh. 4.)

The court found the Debtors' oral testimony to be extremely credible and supported by documentary evidence. To the contrary, Rosenberg's "evidence" consisted of only bald unsupported assertions and was generally not credible to the court.

On September 15, 1993, the court signed its Order Denying Motion for Relief from Stay. (Docket No. 22.) The order provided:

IT IS ALSO HEREBY ORDERED that all payments that were to be made according to the terms of the confirmed plan to said Creditor, David Rosenberg, through the Chapter 13 Trustee's office, are to be held in escrow by the Chapter 13 Trustee until said Creditor, David Rosenberg, provides the Debtors with a Michigan Vehicle Title for their purchased 1987 Ford Aerostar Van. Said Michigan Title shall be given by the Creditor to the Debtors to be kept in their possession with the Debtors being listed as the owners of said vehicle and David Rosenberg to be listed on the face of the title as the first secured party. Until said motor vehicle title is produced to the Debtors or their attorney pursuant to these terms, the Chapter 13 Trustee shall not release any monies to the Creditor, David Rosenberg. If said David Rosenberg provides the original Michigan Vehicle Title to Debtors or their attorney, Roger J. Bus, as ordered by this Court, then said monies being held in escrow by the Trustee shall be released to said Creditor in the normal monthly disbursement cycle of the Chapter 13 Trustee's office. Further, by order of this Court, the Debtors will be allowed continued use of said 1987 Ford Aerostar vehicle and are hereby Ordered to keep said vehicle fully insured.

Rosenberg appealed the Order Denying Motion for Relief from Stay. On June 3, 1994, Honorable David W. McKeague, United States District Judge for the Western District of Michigan, affirmed this court in his Order Denying Appeal. (Docket No. 35.) No further appeal was taken and this court's order is a final order.

On July 6, 1994, the Debtors filed their Motion for Turnover of Motor Vehicle Title on a 1987 Ford Aerostar Van from David Rosenberg. (Docket No. 36.) The Debtors requested a turnover of the vehicle title and other relief, including costs, expenses, damages, and attorneys' fees for the Debtors and their counsel. A hearing on that motion took place on August 18, 1994, herein, "Transcript 8–18–94". The court found Rosenberg was properly served with the notice of hearing. (Trans. 8–18–94, pp. 3, 23–24.) Rosenberg did not appear at the hearing.

At that hearing, Seal again testified. She reiterated that Rosenberg had previously presented her with a special mailing of certificate of title that Rosenberg would then send to the Michigan Secretary of State. This would permit Rosenberg to keep the title in his possession. She refused to sign this document because she wanted to keep the title herself. (Trans. 8–18–94, pp. 8–10; Debtors' Exh. 3.)

Seal also testified that Rosenberg had telephoned her postpetition on numerous occasions, "cussed her", and told her she better "pay him the money" or he would take the vehicle back. She told Rosenberg that chapter 13 protected her from creditor contact and Rosenberg should communicate with her attorney. Rosenberg "slowed down after the September 9th order" and contacted her only "three times since then". (Trans. 8–18–94, p. 14.) As of the hearing date, the Debtors had still not received the vehicle title from Rosenberg despite repeated requests from their attorney to Rosenberg.

At the hearing, a representative from the chapter 13 trustee's office also testified. Upon questioning by Debtors' counsel, it was stated that the trustee had paid $847.64 to Rosenberg after confirmation of the Debtors' chapter 13 plan. Two payments in the amounts of $91.14 and $75.69, for August and September 1993, were sent *before* this court's order was entered to escrow all future payments until the vehicle title was turned over to the Debtors. The balance transmitted to Rosenberg, i.e., $680.81, was erroneously and inadvertently paid *after* the court's order was entered to escrow Rosenberg's plan distributions. (Trans. 8–18–94, pp. 20–21.)

At the conclusion of the hearing, the court stated its oral bench opinion. (Trans. 8–18–94, pp. 23–29.) In accordance with that opinion, on September 2, 1994, the court signed its Order Granting Motion of Debtors for Turnover of Motor Vehicle Title on a 1987 Ford Aerostar Van from David Rosenberg, the "Title Turnover Order". (Docket No. 41.) That order stated in pertinent part:

IT IS HEREBY ORDERED:

1. That the Creditor, David Rosenberg, shall turn over the Michigan motor vehicle title to the Debtors' 1987 Ford Aerostar Van, Vehicle Identification Number 1FMCA1105A7866261 to the Debtors' counsel within 10 days of service of this Order upon said David Rosenberg.

2. That the failure of said David Rosenberg to turn over the title of said vehicle will result in him being deemed in Contempt of this Court.

3. If said motor vehicle title is timely turned over to the Debtors' counsel, Roger J. Bus, Debtors' counsel in connection with the confirmed Chapter 13 plan, will cause the vehicle title to be transferred with David Rosenberg to be listed as the first secured party on said title.

4. If said David Rosenberg does not timely turn over the Michigan motor vehicle title for the 1987 Ford Aerostar Van, upon request of Debtors' counsel and/or the Chapter 13 trustee, Joseph A. Chrystler, this Court will hold a hearing in regard to damages, including actual, compensatory and punitive, that may be awarded against said David Rosenberg.

5. That in the event said David Rosenberg has failed to comply with any other Court Orders including the Automatic Stay provisions of Section 362(a), the Debtors' counsel may file a Motion for appropriate relief and the Chapter 13 trustee may also file a request for relief as appropriate.

This order was not appealed and became a final order.

Nearly five months later, Rosenberg had still not complied with the Order Denying Relief from Stay and the Title Turnover Order. On January 31, 1995, a Motion of the Debtors to Require the State of Michigan to Issue a Motor Vehicle Title on a 1987 Ford Aerostar Van to Debtor, Terry L. Seal, Listing Said Debtor as Owner to Said Vehicle was filed. (Docket No. 49.) That motion, in pertinent part, stated as follows:

2. That on September 2, 1994, Honorable James D. Gregg ordered that David Rosenberg turn over to the Debtors the motor vehicle title to the 1987 Ford Aerostar Van, vehicle identification number 1FMCA11U5HZB66261, to the Debtors' counsel within 10 days.

3. That said David Rosenberg has failed to turn over the title of said vehicle to the Debtors or their counsel and Debtors have no reason to believe said title will ever be turned over.

4. That on January 29, 1995, the Debtor, Terry Lynn Seal, was cited for improper registration by a Lawton police officer, Brian A. Rex, for failure to have proper registration on the motor vehicle.

5. That the Debtors wish to continue to use their vehicle and cannot do such until they have a proper title for said vehicle.

6. According to patrolman Brian A. Rex of the Lawton Police Department, a motor vehicle registration check on the Debtor's vehicle showed no Michigan title issued on said vehicle in the name of any party.

WHEREFORE, the Debtors would Motion this Court that it order the Michigan Secretary of State to issue a motor vehicle registration on the Debtor's 1987 Ford Aerostar Van, vehicle identification number 1FMCA11U5HZB66261, listing the Debtor, Terry L. Seal, as the owner.

Based upon the statements in that motion, the court became cognizant of, and sensitive to, the fact that the Debtors could not operate their vehicle because of continued lack of title and proper registration. Given the number of prior hearings and its prior findings, the court determined to grant the Debtors' requested relief, subject to providing the State of Michigan, Secretary of State, the opportunity for a hearing under 11 U.S.C. § 102(1). At that time, the court believed, and still believes, that the Debtors' confirmed plan would be jeopardized if Seal were unable to operate the vehicle to travel to and from her employment. On February 9, 1995, the court prepared and signed its Order Requiring State of Michigan, Secretary of State, to Issue a Motor Vehicle Title to Terry L. Seal Respecting 1987 Ford Aerostar Van, Vehicle Identification Number 1FMCA11U5HZB66261, Subject to State of Michigan's Ability to Object and Request a Hearing, herein "Order Re Title". (Docket No. 49.) After reiterating its previous findings in the preamble, the Order Re Title stated:

NOW, THEREFORE IT IS HEREBY ORDERED AS FOLLOWS:

1. The State of Michigan, Secretary of State, shall issue, as soon as is practicable, a Michigan vehicle title to a certain 1987 Ford Aerostar van, Vehicle Identification Number 1FMCA11U5HZB66261 which lists the Debtor, Terry L. Seal, as the owner.

2. The aforesaid Michigan Vehicle Title shall also list David Rosenberg, 578 Portage, Kalamazoo, Michigan, 49001, as the first secured party.

3. Issuance of said Michigan Vehicle Title by the State of Michigan, Secretary of State, shall be conditioned upon the Debtors paying all requisite fees required by statute or regulation.

4. Contemporaneously with the issuance of the new Michigan Vehicle Title, or as soon thereafter as practicable, the State of Michigan, Secretary of State, shall provide the Debtor, Terry L. Seal, as owner, with a motor vehicle registration, conditioned upon requisite payment of all fees required by statute or regulation.

5. After the Debtors have paid sufficient funds to the Chapter 13 Trustee to fully pay the Creditor's allowed secured claim, including present value, this court may issue another order which requires the State of Michigan, Secretary of State, to delete the Creditor's name [David Rosenberg] from the title as the first secured creditor.

6. Notwithstanding this order, the court retains jurisdiction to provide other appropriate or necessary relief to the Debtors, and other parties in interest, as may be provided in the Bankruptcy Code, including holding the Creditor, David Rosenberg, in contempt of court and/or awarding appropriate damages to the Debtors, or the Debtors' estate, as a result of the Creditor's failure to timely comply with orders of this court.

The Order Re Title was served upon the Debtors; the Debtors' attorney; the chapter 13 trustee; Rosenberg; the State of Michigan, Secretary of State, Motor Vehicle Administration; and the United States Trustee.[4]

4. At a subsequent hearing, the court was advised that the State of Michigan, Secretary of State, issued a title to Debtor Terry Seal, with Rosenberg listed as a first secured party. (Trans. 4– 20–95, p. 16.) The Debtors obtained a vehicle registration and a license plate and were then again able to operate the vehicle.

On February 16, 1995, Rosenberg filed his Request to Rescind Order of February 9, 1995, pertaining to the Order Re Title. (Docket No. 50.) A hearing regarding Rosenberg's request took place on April 20, 1995, herein "Trans. 4–20–95". Rosenberg argued: (1) the Debtors purchased the vehicle under false pretenses; (2) he did not need to give the Debtors a vehicle title until they paid him $263.00 to accomplish the title transfer; (3) he was entitled to disregard the automatic stay because he is a secured creditor who was not being paid under the confirmed plan; and (4) he wanted proof of insurance for the vehicle. (Trans. 4–20–95, pp. 2–3.) All of Rosenberg's arguments had been previously considered and decided at the September 9, 1993, final hearing which resulted in this court's Order Denying Motion for Relief from Stay. (Docket No. 22.) That order was then affirmed by the district court in its Order Denying Appeal. (Docket No. 35.) Because no other grounds were alleged, or shown, to rescind its Order Re Title under Bankruptcy Rule 9023 or 9024, the court denied Rosenberg's request. (Trans. 4–20–95, pp. 21–23.) The court requested the Debtors' attorney or the chapter 13 trustee to provide Rosenberg with a copy of the newly-issued vehicle title which listed Rosenberg as the first secured party. (Trans. 4–20–95, p. 23.)[5]

On May 12, 1995, Rosenberg filed a Motion to Release Escrow Funds, the "Escrow Funds Motion". (Docket No. 55.) On June 21, 1995, the Debtors' Response to Motion to Release Escrow Funds was filed. (Docket No. 57.) Also on June 21, 1995, the Motion of the Debtors for Actual, Punitive, and Compensatory Damages and for Awarding of Attorney Fees Against David Rosenberg, the "Damages Motion", was filed. (Docket No. 60.)

The hearing on the Escrow Funds Motion took place on June 22, 1995, herein "Trans. 6–22–95". Rosenberg requested immediate release of the escrowed funds because the title had previously been issued. (Trans. 6–22–95, p. 3.) Because of the amount of time that would be required to hear evidence pertaining to the Escrow Funds Motion, and because the Damages Motion had been filed only one day earlier, the court determined to hear both motions on August 10, 1995, with two hours reserved for hearing.[6]

On July 24, 1995, the Amendment of Motion of the Debtors for Actual, Punitive, and Compensatory Damages and for Awarding of Attorney Fees Against David Rosenberg was filed, the "Amended Damages Motion". (Docket No. 66.) This amended motion was served upon Rosenberg and the chapter 13 trustee on July 21, 1995.

On August 10, 1995, a consolidated hearing regarding the Escrow Funds Motion and the Amended Damages Motion was commenced, herein "Trans. 8–10–95". Because proofs could not be completed within the two hours originally allotted, the hearing was continued to, and completed on, September 7, 1995, herein "Trans. 9–7–95".

In his Escrow Funds Motion, Rosenberg requests that the chapter 13 trustee "immediately release all funds held in escrow" to be applied toward the Debtors' indebtedness to Rosenberg. Notwithstanding this court's prior findings to the contrary at previous hearings, Rosenberg argued that the Debtors had not paid the title transfer fee and the sales tax and that insurance on the vehicle was lacking. Because the Debtors' attorney, by the Order Re Title, had obtained a title for the vehicle, Rosenberg concluded "there is no further reason to keep my money in escrow".

The Debtors' Amended Damages Motion sees things differently. This court agrees with many of the Debtors' assertions in that motion. Notwithstanding numerous hearings, Rosenberg has never provided the Debtors with a vehicle title, as required by Michigan law and this court's prior orders.

---

5. The court takes judicial notice that the Debtors' attorney sent a copy of the title to Rosenberg on April 20, 1995, as is shown by a copy of the transmittal letter, with an attached copy of the vehicle title, which is in the court's file. Fed. R.Evid. 201.

6. Because the Escrow Funds Motion was scheduled for 9:00 a.m. in a regular motion day in Kalamazoo, and because there were 86 other matters scheduled, it would have been extremely difficult, if not impossible, to complete the hearing.

The only reason the Debtors eventually obtained a vehicle title was because of their attorney's efforts and the February 9, 1995 Order Re Title. The Debtors finally received a vehicle title approximately two years and four months after they purchased the vehicle from Rosenberg. (It should be noted that even after the Debtors obtained the title, Rosenberg sought to rescind the Order Re Title, again spuriously alleging he had no obligation to provide a title to the Debtors.)

Because of this court's previous order stating that Rosenberg would be held in contempt if a vehicle title was not promptly provided to the Debtors and because of Rosenberg's repeated violations of the automatic stay, the Debtors have requested various types of compensatory damages. Without question, Rosenberg has continuously, flagrantly, and knowingly violated this court's prior orders. He has frequently and, this court believes, maliciously harassed the Debtors in contravention of the automatic stay. The Debtors have needlessly suffered damages, as a result of Rosenberg's contumacious conduct, although not to the full extent claimed by them in the Amended Damages Motion.

The Debtors have requested payment of attorneys' fees in a total amount of $1,025.00, commencing with services rendered on July 23, 1993, pertaining to the title problem. The court finds that reimbursement of the Debtors' attorney's fees should be commenced as of June 4, 1994. This is one day after Judge McKeague, on appeal, upheld this court's Order Denying Relief From Stay. On June 4, 1994, or shortly thereafter, Rosenberg should have provided the Debtors with a vehicle title and stopped his unwarranted and frivolous actions. Rosenberg would have then received the money being held in escrow by the chapter 13 trustee and would have begun receiving regular monthly payments on his allowed claim. Rosenberg chose not to follow this proper course of action. The Debtors are entitled to payment of their attorney's fees as follows:

| Date | Attorney Services Rendered | Amount Of Time |
|---|---|---|
| 6–29–94 | Response letter to Mr. Rosenberg prepared and sent | .2 |
| 7–1–94 | Preparation and filing of Motion for Turnover of Vehicle Title | .5 |
| 7–23–94 | Preparation of letter to Mr. Rosenberg along with Stipulation for Adequate Protection | .3 |
| 8–16–94 | Response letter to Mr. Rosenberg sent | .2 |
| 8–17–94 | Response letter to Mr. Rosenberg sent | .2 |
| 8–18–94 | Hearing held on Motion for Turnover of Title | .4 |
| 8–26–94 | Drafting Order Granting Motion for Turnover | .3 |
| 9–12–94 | Response letter to Mr. Rosenberg | .1 |
| 9–13–94 | Preparation and filing of Answer to the Response of David Rosenberg | .2 |
| 11–8–94 | Response letter to Mr. Rosenberg | .1 |
| 1–3–95 | Filing of Motion to Require State of Michigan to Issue Title | .4 |
| 1–25–95 | Review of letter of Mr. Rosenberg | .1 |
| 1–27–95 | Response letter to Mr. Rosenberg | .2 |
| 2–20–95 | Response letter to Mr. Rosenberg and letter to Debtors on said response | .2 |
| 4–20–95 | Preparation for and Court hearing with Debtor and Mr. Rosenberg | .3 |
| 4–26–95 | Receive fax letter from Thomas Demling on behalf of David Rosenberg | .1 |

| Date | Attorney Services Rendered | Amount Of Time |
|------|---------------------------|----------------|
| 4–28–95 | Response letter to Thomas Demling, copy to Debtors and trustee | .2 |
| 6–21–95 | Preparation and filing of Answer to Motion for Release of Escrow Funds | .2 |
| 6–21–95 | Preparation and filing of Motion for Damages | .8 |

---

(See Debtors' Damages Motion, ¶ 13, p. 4; Trans. 8–10–95, pp. 21–22; 25–26.)

The Debtors' attorney charges $125 per hour and the court finds the hourly rate is reasonable. The total time requested by the Debtors' attorney from June 5, 1994 to June 21, 1995, is only 5.0 hours. The total awardable attorney's fees are $625.00, and they are allowed as damages.[7]

Although not explicitly requested in the Damages Motion or the Amended Damages Motion, the court finds other attorney's fees resulted from Rosenberg's contemptuous acts, violation of the automatic stay, and willful disregard of this court's orders. The court will allow .8 hours for preparation of the Amended Damages Motion, 3.0 hours in preparation for and attendance at the August 10, 1995 hearing, 2.0 hours in preparation for and attendance at the September 7, 1995 continued hearing, and .7 hours for preparation of the Debtors' and Their Attorney's Response to the Closing Arguments of Creditor David Rosenberg. (Docket No. 85.) This totals 6.5 hours at $125.00 per hour for an additional $812.50 in attorney's fees.[8]

The Debtors allege they have been severely inconvenienced and damaged by Rosenberg's acts and omissions. The court finds Seal has taken time off from work to attend every court hearing after June 4, 1994, when Rosenberg continued to refuse to provide title to the vehicle.[9]

The time spent by Seal at bankruptcy court hearings is determined as follows:

| Hearing Date | Contested Matter Heard | Time Spent Off Work |
|--------------|------------------------|---------------------|
| 8–18–94 | Hearing re Motion for Turnover of Vehicle Title | ½ Day (4 hrs. p.m.) |
| 4–20–95 | Hearing on response of David Rosenberg | ½ Day (4 hrs. a.m.) |
| 6–22–95 | Hearing re Motion to Release Escrow Funds by David Rosenberg | ¼ Day (2 hrs. a.m.) |
| 8–10–95 | Hearing held re Motion/Amended Motion For Damages and Adjourned Motion to Release Escrow Funds | ½ Day (4 hrs. p.m.) |
| 9–7–95 | Continued hearing re Motion/Amended Motion for Damages and Adjourned Motion to Release Escrow Funds | ½ Day (4 hrs. p.m.) |

---

The total amount of time Seal was absent from work to travel to and from the court-

7. Although the Debtors' attorney spent additional time on these matters as a result of Rosenberg's unwarranted actions, no reimbursement was sought for some of the services rendered and expenses incurred, including travel time, mileage, postage, and copy expense. (Trans. 8–10–95, p. 25.)

8. This calculation was determined by considering the original Damages Motion preparation time which was .8 hours; the attorney's fees for the hearing were based upon the duration of the

hearings per the two transcripts and the waiting time for the hearings.

9. The findings of the court are based upon the court's records, including its calendars, resumes, and transcripts of the hearings which are in its file. Consistent with the court's ruling as to attorney's fees damages, the time spent by Seal at hearings prior to Judge McKeague's appellate decision shall not be reimbursed as damages.

house, meet with her attorney, and to attend Bankruptcy Court hearings is 2¼ days, i.e., 18 hours.[10]

Seal works for First of America Bank as an upper-level manager. Her hourly wage rate is $29.95 per hour. (Trans. 9–7–95, p. 7; Exh. B.) The amount of Seal's lost wages for attendance at bankruptcy court hearings, as a result of Rosenberg's contemptuous actions, is $539.10.

Rosenberg argues that Seal did not lose any pay because she was not "docked" and still received the full amount of her payroll checks. However, Seal was compelled to utilize vacation time and personal leave time to attend the bankruptcy court hearings. (Trans. 8–10–95, pp. 56–60.) Whether Seal was "docked" wages or was denied use of her personal leave or vacation days is immaterial in this court's judgment; she was damaged by Rosenberg when she lost an earned benefit, whether it was vacation time or personal leave time.

Seal alleges that Rosenberg intentionally damaged her reputation with her co-workers at her bank employment. As a result of Rosenberg's actions, she asserts she suffered migraine headaches caused by stress. The Debtors state that increased medical bills have resulted in excess of $1,000.00. (See Damages Motion, ¶ 11, 12 and 14.) The court, although not unsympathetic to Seal's plight, finds that sufficient evidence is lacking to show that Rosenberg caused any damage to Seal's reputation, or caused or worsened her medical condition.[11]

The Debtors assert that the vehicle purchased from Rosenberg is a "lemon". (See Damages Motion, ¶ 14.) Repairs to the vehicle are alleged to be $2,474.13. However, no proof exists that these asserted damages are Rosenberg's responsibility as a result of his violation of the automatic stay or his contemptuous disregard of court orders.

Approximately six or seven months after the Order Denying Appeal, Rosenberg had still refused to provide the vehicle title to the Debtors. One Saturday morning, Seal drove her vehicle near her home in Lawton, Michigan. A local police officer stopped her for not having proper registration and license plates. Although Seal showed the officer all her bankruptcy court documents, which included the findings that she owned the vehicle and Rosenberg had been ordered to turn over the vehicle title, she was ticketed, the vehicle license plates were removed by the officer, and she was instructed not to drive the vehicle. (Trans. 8–10–95, pp. 40–41.)

After this incident, Seal borrowed vehicles and credibly testified she rented a vehicle from Thrifty Car Rental at a cost of $124.00. (Trans. 8–10–95, pp. 41–42.) She also attended a state court proceeding regarding her operation of the vehicle without proper registration. At that hearing, she explained her financial circumstances, and Rosenberg's continued refusal to provide the vehicle title in contravention of this court's prior orders, to a state court magistrate. Although no fine was imposed, Seal was lectured and told not to operate the vehicle until a title was obtained, and the vehicle was properly registered, as required by Michigan law. (Trans. 8–10–95, pp. 42–43.)

This court finds, based upon testimony and the circumstances, that Seal was again absent from work for another one-half day to handle her state court problem. This absence resulted from Rosenberg's actions. Additional damages of $29.95 per hour for four hours, i.e., $119.80, are therefore awarded.

10. Seal testified she has spent at least 40 hours in the courtroom either "physically waiting or sitting ... during court proceedings." (Trans. 8–10–95, p. 45.) That is very probably true. However, all time spent by Terry Seal in waiting or attending hearings is not necessarily directly attributable to Rosenberg's violation of the automatic stay or his contemptuous disregard of this court's orders. Also, with regard to travel time, it takes Seal approximately 30 minutes to drive from her work location in Oshtemo to the courtroom in downtown Kalamazoo. (Trans. 8–10–95, p. 76.)

11. It was also alleged that Seal received a lesser performance evaluation at her work, solely because of increased absences caused by Rosenberg. (See Damages Motion, ¶ 13.) However, this allegation was waived by the Debtors' attorney at the beginning of the hearing and the court permitted no proofs as to whether Rosenberg may have caused Seal to receive a lesser pay increase.

After the Debtor's chapter 13 case was filed, Rosenberg, with knowledge of the pendency of the case and in contravention of the automatic stay, harassed Seal. He threatened to repossess the vehicle. (Trans. 8–10–95, pp. 32–33.)

Subsequently, after this court entered the Title Turnover Order, Rosenberg continued to harass and attempt to intimidate Seal. At the conclusion of one of the bankruptcy court hearings, he followed Seal from the courtroom to the parking lot. While Seal was in the vehicle, Rosenberg first approached the passenger-side door and then the driver's door. When Seal attempted to drive away, he stood in front of the vehicle and blocked her egress from the parking lot. Two United States Marshals arrived on the scene and told Rosenberg to move and permit Seal to leave the parking lot. She almost had an accident when she pulled into traffic. (Trans. 8–10–95, pp. 46–47.) [12]

The court finds that Rosenberg has maliciously harassed the Debtors during the pendency of this case. He has, without question, violated the automatic stay. Given Rosenberg's conduct, the court finds that imposition of punitive damages is appropriate.

Although the court believes that Rosenberg is an intelligent person, he is stubborn and appears totally misguided. At the preliminary hearing for relief from stay, the Debtors' chapter 13 plan had already been confirmed. Rosenberg, if determined to be a secured creditor, was to be paid the full amount of his claim, with contract rate interest at ten percent per annum. Even if Rosenberg was determined to be the holder of an *unsecured* claim, he was to receive 100% payment of the balance of his claim, without interest. (See, e.g., Trans. 8–12–93, p. 16.) At the final relief from stay hearing, it appeared that a settlement was imminent. The court encouraged settlement discussions. (Trans. 9–9–93, pp. 3–4.) For reasons known only to Rosenberg, he decided to litigate the matter (rather than being paid the full amount of his claim under the plan), willfully violate the automatic stay by harassing and intimidating the Debtors, and continuously and contemptuously fail to obey this court's orders. Pursuant to these findings of fact, Rosenberg will be treated in accordance with applicable law.

## IV. DISCUSSION

### A. *Rosenberg's Claim.*

#### 1. *Is the claim secured?*

On October 17, 1992, when the Debtors purchased the vehicle from Rosenberg, he had certain obligations under the Michigan Vehicle Code.[13] Rosenberg as "[a] dealer selling ... vehicles required to be titled, within 15 days after delivering a vehicle to the purchaser ... shall apply to the secretary of state for a new title, if required, and transfer or secure registration rights and secure a certificate of registration for the vehicle ... in the name of the purchaser." Mich.Comp.Laws Ann. § 257.217(2). Rosenberg failed to comply with Michigan law. After the dealer submits an application, "... the secretary of state shall issue a registration certificate and a certificate of title when registering a vehicle and upon receipt of the required fees." Mich.Comp.Laws Ann. § 257.222(1). The secretary of state would then deliver the registration certificate to the owner, i.e., the Debtors. Mich.Comp.Laws Ann. § 257.222(2). The certificate of title would then have been "mailed or delivered to the owner or other person the owner may direct in a separate instrument, in a form the secretary of state shall prescribe." Mich. Comp.Laws Ann. § 257.222(5).[14]

---

**12.** This incident occurred while court was in session and was witnessed by this judge through the courtroom windows. This judge immediately recessed the court proceedings and requested the two marshals to leave the courtroom to stop Rosenberg and to assist Seal in her efforts to exit the parking lot.

**13.** The Michigan "Vehicle Code" is set forth in Mich.Comp.Laws Ann. § 257.1 *et. seq.* A "motor vehicle" is defined in the Vehicle Code. Mich. Comp.Laws Ann. § 257.33. "Every motor vehi-

cle ... is subject to the registration and certificate of title provisions of [the Vehicle Code]...." Mich.Comp.Laws Ann. § 257.216. A "dealer" is defined in the Vehicle Code. Mich.Comp.Laws Ann. § 257.11. Rosenberg is unquestionably a dealer. He has sold a number of vehicles during the past three years and had approximately fifteen to twenty vehicles for sale on his property. (Trans. 9–7–95, pp. 18–19.)

**14.** Although Rosenberg requested her to do so, Seal refused to sign a document that would have

Because Rosenberg failed to comply with Michigan law, the Debtors did not receive a registration certificate or title.[15] In addition to violating Michigan law, Rosenberg continually disobeyed or ignored this court's orders which required him to obtain a vehicle registration and vehicle title for the Debtors. Only after this court issued its Order Re Title, without any assistance from Rosenberg, did the Debtors finally receive a vehicle registration and title.

■ Rosenberg also failed to obtain a security interest in the vehicle which he sold to the Debtors.[16] Any security interest asserted by Rosenberg respecting the vehicle is not enforceable against the Debtors because Rosenberg did not retain possession of the vehicle and neither of the Debtors signed a security agreement which contained a description of the vehicle.[17] Mich.Comp.Laws Ann. § 440.9203(1)(a) and (b). The court holds that Rosenberg is not the holder of a security interest in the vehicle within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(51).

Even assuming a written security agreement had been executed by one, or both, of the Debtors, there exists no evidence of perfection of a security interest.

[Mich.Comp.Laws Ann.] § 440.9302, with certain exceptions, generally requires that a financing statement must be filed to perfect a security interest. One of the exceptions relates to the instance when a security interest in a titled vehicle is perfected. [Mich.Comp.Laws Ann.] § 440.9302(3)(b) states that the filing of a financing statement is *not* necessary or effective to perfect security interests in

vehicles subject to the Michigan Vehicle Code, as amended, [Mich.Comp.Laws Ann.] §§ 257.1–257.1626. Further, [Mich. Comp.Laws Ann.] § 440.9392(4) mandates that compliance with the Michigan Vehicle Code is equivalent to the filing of a financing statement. Therefore, in Michigan, the perfection of a security interest in a motor vehicle is governed by the Vehicle Code and the rights of parties arising from a perfected or unperfected status are governed by Article 9 of the Uniform Commercial Code as adopted in Michigan, [Mich.Comp.Laws Ann.] §§ 440.9101–440.9507.

*Remes v. Ford Motor Credit Co. (In the Matter of Churchwell)*, 80 B.R. 855, 856–57 (Bankr.W.D.Mich.1987) (emphasis in original). Because Rosenberg is not a secured creditor, he shall be treated under the Debtors' confirmed chapter 13 plan as an unsecured creditor. Also, this court will order that Rosenberg's name be deleted as the "first secured party" on the title obtained by the Debtors from the Michigan Secretary of State pursuant to this court's prior Order Re Title.

### 2. *What is the amount of the claim?*

The original purchase price of the vehicle was $4,129.00. This was comprised of the agreed vehicle cost of $3,950.00, sales tax of $158.00, and the title transfer fee of $21.00. After the $800.00 down payment was applied, the balance owed by Seal to Rosenberg, as of the sale date on October 17, 1992, was $3,329.00.

Interest on the obligation was agreed to be ten percent per annum.[18] Based upon the

---

authorized the secretary of state to mail or deliver the title to Rosenberg. (Trans. 8–18–94, pp. 8–10; Debtors' Exh. 3.)

**15.** The court notes that Rosenberg may be guilty of a crime. "It is a misdemeanor for any person to fail or neglect to properly endorse and deliver a certificate of title to a transferee or owner lawfully entitled thereto." Mich.Comp.Laws Ann. § 257.239. This is an issue outside of this court's jurisdiction and may be raised in a court for the State of Michigan.

**16.** In the Vehicle Code, "security interest" and "security agreement" have the same meanings as

in the Uniform Commercial Code, as adopted by Michigan. Mich.Comp.Laws Ann. § 257.58b.

**17.** Possession of the vehicle was given to the Debtors by Rosenberg at the time of sale. Rosenberg, at the final hearing for relief from stay and all other hearings, failed to produce a written security agreement. He failed to meet his burden of proof on this issue. 11 U.S.C. § 363(*o*)(2).

**18.** Although there was no explicit proof as to the interest rate, the Debtors, through counsel, stated this was the "contract rate". Rosenberg made no statements nor presented any proofs to the contrary.

balance owed on the sale date, the interest accrual is $.912 per day. From October 17, 1992, the sale date, to January 26, 1993, the chapter 13 filing date, accrued interest totaled $92.11. As of the filing date, Seal owed Rosenberg $3,021.11.[19]

■ An unsecured creditor, as is Rosenberg, is generally not entitled to receive post-petition interest. 11 U.S.C. § 502(b)(2); *Vanston Bondholders' Protective Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *Thompson v. Kentucky Lumber Company (In re Kentucky Lumber Company)*, 860 F.2d 674, 676 (6th Cir.1988); *see generally* 3 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY, ¶ 502.02[2] (15th ed. 1995); 2 WILLIAM L. NORTON, JR., NORTON, NORTON BANKRUPTCY LAW AND PRACTICE 2D § 41:19 (1994). After filing, Rosenberg's claim was further reduced by the payments he received from the chapter 13 distributions in the total amount of $847.64. *See, supra*, pp. 446–47. Rosenberg is now owed $2,173.47.

B. *Rosenberg's Contempt of Court and Violation of Automatic Stay.*

1. *Contempt of Court.*

■ A bankruptcy court has statutory power to utilize civil contempt to enforce its orders. 11 U.S.C. § 105(a); *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir.1990); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir.1989); *In the Matter of Sielaff*, 164 B.R. 560, 568 (Bankr.W.D.Mich. 1994).[20] To find civil contempt, there must be a specific and definite court order which has been violated and the person who violated the order must have previous knowledge of it. *Matter of Sielaff*, 164 B.R. at 568–69; *Schewe v. Fairview Estates (Matter of Schewe)*, 94 B.R. 938, 947 (Bankr.W.D.Mich. 1989).

In this case, it is certain that Rosenberg both knew of and violated the court order to turn over the vehicle title to the Debtors. He appealed this court's first Order Denying Relief From Stay and, after losing on appeal, ignored or refused to comply with all of this court's subsequent enforcement orders.

■ Sanctions for civil contempt may include the award of compensatory damages for losses incurred, payment of attorneys' fees and costs, expungement of a creditor's claim, and payment of punitive damages. *Matter of Schewe*, 94 B.R. at 947. The court awards the Debtors the following damages:

| | |
|---|---|
| Attorneys' fees from 6–5–94 to 6–21–95 | 625.00 |
| Attorneys' fees related to Damages Motion hearing | 812.50 |
| Seal's loss of benefits for attending bankruptcy court hearings | 539.10 |
| Seal's rental car expense | 124.00 |
| Seal's loss of benefits for attendance at state court hearing | 119.80 |

**19.** The claim as of the filing date is calculated by taking the debt as of the sale date, adding the accrued interest to the filing date, and subtracting the two payments of $200.00 each made between the date of sale and the date of filing. This end calculation would have been slightly less if the Debtors had presented evidence of the dates when the two payments had been made. However, even if such evidence had been presented, the claim reduction would be nominal. The court acknowledges that Rosenberg has received the benefit of the doubt in this instance because the Debtors' failure to submit evidence.

**20.** However, it is sometimes held a bankruptcy court does not possess *criminal* contempt powers. *In re Lawrence*, 164 B.R. 73, 76 (W.D.Mich. 1993) (citing *In re Hipp, Inc.*, 895 F.2d 1503, 1511 (5th Cir.1990)). Another, and perhaps the better, view is that bankruptcy court may utilize criminal contempt to enforce their orders, as do magistrates, by making reports and recommendations to an Article III United States District Judge, who then reviews the contempt proceeding *de novo*. *Brown v. Ramsay (In re Ragar)*, 3 F.3d 1174, 1179–80 (8th Cir.1993). After carefully reviewing the facts, this court has determined *not* to seek to hold Rosenberg in criminal contempt at this time. The court will utilize both its civil contempt power and 11 U.S.C. § 362(h) to remedy this situation.

The Debtors' presented compelling evidence regarding these compensatory damages and attorneys' fees, all of which were caused by Rosenberg, in the total amount of $2,220.40.

■ An award of damages based upon civil contempt should not be speculative or conjectural. *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir.1988). Before damages may be awarded against a person who has willfully violated a court order, it must be shown that the damages were caused by the violator. *Id.* Seal's requested damages for harm to her reputation, migraine headaches caused by stress, increased medical bills, and repairs to the vehicle, are denied because of lack of evidence as to causation by Rosenberg and/or the speculative nature of the proofs.

### 2. *Violation of Automatic Stay.*

■ A creditor who willfully violates the automatic stay and thereby causes injury to a debtor must pay actual damages, costs and attorneys' fees and, if warranted, punitive damages. 11 U.S.C. § 362(h).[21]

> "A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded."

*Pinkstaff v. United States (In re Pinkstaff),* 974 F.2d 113, 115 (9th Cir.1992) (quoting *Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989)).

It is incontrovertible that Rosenberg knew of the automatic stay. Rosenberg intentionally violated the stay by telephoning Seal on multiple occasions and threatening to repossess the vehicle. He also maliciously harassed and attempted to intimidate Seal, including the incident when he blocked her egress from the court's parking lot. Any possible good faith belief Rosenberg may have had that he possessed a right to the vehicle is no defense. Such a belief is irrelevant to the determination whether his acts were willful and, therefore, damages are appropriate.

■ The Debtors are not entitled to any actual damages for Rosenberg's violations of the automatic stay because they failed to prove that he caused any nonspeculative harm by his actions. Although the Debtors are entitled to their attorney's fees, the court has already awarded those fees as a result of Rosenberg's civil contempt for violation of court orders. "Double-dipping" of attorney's fees is not permissible.

■ However, the award of punitive damages to the Debtors is appropriate in these circumstances. When a bankruptcy court believes the amount of actual damages is insufficient to deter deliberate and repeated violations, it is free to impose punitive damages. *Archer v. Macomb County Bank,* 853 F.2d at 500. The deliberate, unwarranted, and egregious nature of a violator's actions should be taken into consideration in fashioning relief under 11 U.S.C. 362(h). *In re Markey,* 144 B.R. 738, 747 (Bankr. W.D.Mich.1992) (awarding $12,500.00 in punitive damages for repeated bad faith violations of the stay).

In this case, given all circumstances, the court determines that $750.00 is an appropriate amount of punitive damages. If Rosenberg again violates the automatic stay in this case, the court will then consider imposing a substantially higher amount of punitive damages to deter his conduct.

### C. *Setoff of Debtors' Damages Against Rosenberg's Chapter 13 Claim.*

■ Rosenberg's claim in this chapter 13 case is now $2,173.47. Rosenberg now owes the Debtors $2,970.40 in compensatory damages, attorney's fees, and punitive damages. The Debtors argue that Rosenberg is extremely unlikely to voluntarily pay any obli-

---

**21.** This statutory subsection states: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

gation resulting from his contemptuous disregard of court orders and repeated violations of the automatic stay. Based upon prior hearings, and the court's observations of Rosenberg, the court agrees with the Debtors' assertion.

■ "Developing appropriate sanctions in civil contempt proceedings may require creativity; any award granted should be consonant with the goal of full remedial relief." *Matter of Schewe*, 94 B.R. 938 (Bankr. W.D.Mich.1989). What relief may this court fashion which will guarantee payment of substantially all of the damages awarded to the Debtors? The equitable remedy of setoff will accomplish a just result.

■ Section 553 of the Bankruptcy Code addresses a creditor's right to effectuate setoff.[22] To invoke setoff, three requirements must be met. "The debt owed to the debtor and the claim asserted against the debtor (1) must be mutual obligations; (2) that arose from separate transactions; and (3) both must have been accrued prepetition." *Matter of American Sunlake Ltd. Partnership*, 109 B.R. 727, 732 (Bankr.W.D.Mich.1989). "The application of setoff is permissive and lies within the equitable discretion of the Bankruptcy Court." *DuVoisin v. Foster (In re Southern Indus. Banking Corp.)*, 809 F.2d 329, 332 (6th Cir.1987).

However, Section 553 only addresses possible setoff of prepetition debts. It is silent whether setoff of mutual *postpetition* obligations is permissible.

■ "Setoff is an equitable right of a creditor to deduct a debt it owes to the debtor from a claim it has against the debtor arising out of a separate transaction; it 'allows parties that owe mutual debts to state the accounts between them, subtract one from the other and pay only the balance.'" *Turner v. S.B.A. (In re Turner)*, 59 F.3d 1041, 1043–44 (10th Cir.1995) (quoting *Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir. 1990)). There is no reason to limit a chapter 13 debtor from seeking postpetition setoff against a creditor.

The court believes it is appropriate to consider the same elements for setoff of postpetition debts that are utilized regarding possible setoff of prepetition debts. Therefore, to warrant *postpetition* setoff, the creditor's debt owed to the debtor and the creditor's claim against the debtor (1) must be mutual obligations, (2) that arose from separate transactions, and (3) both must have been accrued postpetition.

■ The Debtors now owe Rosenberg $2,173.47. Although the genesis of this obligation is prepetition, the debt is now an unsecured postpetition obligation under the Debtors' confirmed 100% repayment plan. Based upon this court's findings and conclusions, Rosenberg now owes the Debtors $2,970.40. This obligation also is a postpetition obligation which arises from contemptuous disregard of court orders and violation of the automatic stay. The two debts are mutual obligations that arose from separate transactions both of which accrued postpetition. Setoff is therefore appropriate. The end result is that Rosenberg owes the Debtors $796.93.[23]

All funds now being held by the chapter 13 trustee in escrow which would have been paid to Rosenberg had he complied with court orders, now belong to the Debtors. Rosenberg's Motion To Release Escrow Funds is therefore DENIED. The trustee

---

22. 11 U.S.C. § 553(a) states in part: "... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...."

23. This result is consistent with the general principles of equity under both federal and Michigan common law. *See, e.g., Hoffman v. Gleason*, 107 F.2d 101, 103 (6th Cir.1940) ("The right of set-off is a natural equity where there are cross demands so that one debt should compensate the other and so that the balance, alone, should be paid by the party who owes the larger debt."). *See also United States v. Shaw (In re McLouth's Estate)*, 281 Mich. 191, 205, 274 N.W. 759 (1937) ("This suit is in equity, where it is recognized that debts should be paid, and the adjustments of demands by set-off rather than by independent suit is favored and encouraged.... It has been expressly recognized that 'the argument (for al-

shall release the escrowed funds to the Debtors. No further distributions shall be made by the chapter 13 trustee to Rosenberg in connection with this case.

Rosenberg shall pay the Debtors the sum of $796.93 within thirty (30) days. If Rosenberg fails or neglects to do so, the Debtors may request the court, by filing a motion, to undertake postjudgment remedies against Rosenberg to collect the indebtedness in accordance with Bankruptcy Rule 7069. Also, the Debtors may seek relief in the form of an administrative transfer whereby, if the chapter 13 trustee owes Rosenberg a distribution in another case, the trustee shall pay the Debtors, rather than Rosenberg, until Rosenberg's obligation to the Debtors is satisfied. *See Stevens v. Baxter (In re Stevens)*, 187 B.R. 48, 52 (Bankr.S.D.Ga.1995) (chapter 13 trustee may recover an overpayment to a creditor by withholding payments to the creditor in another case).

## V. CONCLUSION

Rosenberg is an unsecured creditor. He willfully violated and continuously disregarded this court's prior orders thereby necessitating the remedy of civil contempt. He also knowingly and willfully violated the automatic stay. The Debtors' Amended Damages Motion is partially GRANTED in accordance with this opinion.

Rosenberg's Motion To Release Escrow Funds is DENIED. The Debtors may setoff the damages owed by Rosenberg to them against the escrowed funds and Rosenberg's future chapter 13 distributions. If Rosenberg does not pay the remaining contempt damages to the Debtors within thirty (30) days, the Debtors may seek an appropriate enforcement order from this court, including remedies of execution, garnishment, or administrative transfer of funds by the chapter 13 trustee.

Because Rosenberg does not hold a valid and perfected security interest in the vehicle, and also because Rosenberg's claim against the Debtors has been fully satisfied by the

lowing a set-off) is the stronger if the creditor, for any cause ... cannot be coerced to pay this

postpetition setoff, Rosenberg's name as the "first secured party" on the vehicle title shall be deleted. The Debtors now own the vehicle free and clear of any asserted interest by Rosenberg.

demand.' " (citations omitted)).