In re: CAMALL COMPANY, Debtor.

Camall Company, Appellant,

v.

Steadfast Insurance Company,
et al., Appellees.

Nos. 99–2198, 99–2504.

United States Court of Appeals,
Sixth Circuit.

July 31, 2001.

Before BATCHELDER and CLAY, Circuit Judges, and POLSTER, District Judge.*

BATCHELDER, Circuit Judge.

Debtor–Appellant Camall Company ("Camall") appeals two orders entered by the district court, affirming prior decisions of the bankruptcy court to dismiss Camall's Motion for Turnover, Adversary Proceeding for Turnover, and to lift the Automatic Stay. We AFFIRM the orders of the district court and REMAND the question of ownership of the interpleaded funds to the district court.

* The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

## I. Factual and Procedural Background

Camall is a small pharmaceutical company that manufactures phentermine, an ingredient used in the "Phen–Fen" diet program. Due to injuries and deaths allegedly linked to the use of Phen–Fen, Camall became a defendant in hundreds of tort actions across the country. To protect itself from liability. Camall had entered into an insurance contract with Steadfast Insurance Company ("Steadfast"). The policy also named numerous vendors of Camall's products as insureds. As the legal expenses mounted from preparing to defend Camall and its vendors, Steadfast realized that the liability of the insureds would likely exceed the policy limit of $4 million. The conflicting demands of the insureds led Steadfast to file a declaratory judgment action in Macomb County Circuit Court to determine its obligations to the various insureds under the policy. On November 1, 1998, Steadfast amended this state court complaint to include an interpleader claim. One of the numerous defendant vendors in the declaratory judgment action removed the matter to Federal District Court. Following a December 9, 1998, hearing, Judge Cook of the Federal District Court for the Eastern District of Michigan, Southern Division, ordered Steadfast to deposit with the court the remaining policy limit of approximately $3,060,000 ("Interpleaded proceeds").

On January 4, 1999, Camall filed a voluntary petition for Chapter 11 bankruptcy in the Bankruptcy Court for the Eastern District of Michigan. On January 16, 1999, Camall filed a motion with the bankruptcy court seeking a turnover of the interpleaded proceeds. Shortly thereafter,

Steadfast filed a motion in the bankruptcy court requesting relief from the automatic stay so that the interpleader action could continue in district court, and opposing the motion for turnover.

Bankruptcy Judge Ray Graves held a hearing on the motions on March 25, 1999. Following that hearing, Judge Graves granted Steadfast's motion to lift the stay, and denied Camall's motion for turnover, citing Camall's failure to file the matter as an adversary proceeding as required by Bank. R. 7001. Camall appealed these decisions to the district court, which affirmed the bankruptcy court.

In an effort to cure procedural defects with its Turnover Motion. Camall commenced an Adversary Proceeding in bankruptcy court on March 24, 1999, requesting turnover of the interpleaded proceeds to the bankruptcy estate. Steadfast responded with a motion to dismiss, which was granted, without prejudice, on August 3, 1999. Camall appealed this determination to the district court, which again affirmed the bankruptcy court.

Camall filed timely notices of appeal in both proceedings, which have been combined in this appeal.

## II. Turnover of the Proceeds

Camall argues that the lifting of the stay and the denial of the motion to turnover runs contrary to the Bankruptcy Code's policy of providing an orderly disbursement of a bankrupt's estate. Camall paints the combined motions as a motion to consolidate the proceedings rather than as a motion to turn over the interpleader funds to the bankruptcy estate.

■ It is well established that turnover is appropriate when (1) the money or property directed to be turned over is a part of the bankruptcy's estate, and (2) the bankrupt or person ordered to turn over the property has it in his possession or under his control at the time of the order. *See*

*In re Welded Const., Inc.,* 339 F.2d 593, 594 (6th Cir.1964), (citing *In re Rosser,* 101 F. 562 (8th Cir.1900)); *see also,* 2 Collier on Bankruptcy, § 23.10. Implicit in a turnover proceeding is the transfer of possession of property rightfully belonging to the bankruptcy estate. In this case, the effect of turnover would be to obviate the interpleader action, and essentially rule that Camall's bankruptcy estate is entitled to all the proceeds. It would not, as argued by Camall, merely provide a convenient forum to settle the dispute.

■ Camall lacks both prerequisites for turnover. First, the interpleader proceeds have been deposited with the district court, pursuant to the court's order, making the clerk of the district court the legal custodian of the funds. *See NTL Computer Services Corp. v. Capital Computer Systems,* 755 F.2d 1253, 1263 (6th Cir.1985). Camall can make no colorable claim that the funds sought are in the possession or under the control of Steadfast. Any motion for turnover of the interpleaded proceeds would be more properly addressed to the clerk of the district court, rather than Steadfast.

■ Second, and more importantly, it has not been established that the proceeds are part of the bankruptcy estate. Camall asserts that proceeds are always, automatically part of the debtor's estate. *See e.g., In Re Minoco Group of Companies,* 799 F.2d 517, 519 (9th Cir.1986); *Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560–61 (1st Cir.1986); *In re Vitek,* 51 F.3d 530, 534 (5th Cir.1995). It cites several examples of cases where courts have found insurance proceeds to be a part of the bankruptcy estate, and reasons that these holdings must be universally applicable. However, as one of the cases cited by Camall specifically holds, a "Debtor's right to turnover of the insurance policy's proceeds ... is limited by the contractual

provisions within that policy." *In re Jones,* 179 B.R. 450, 455 (Bankr.E.D.Pa. 1995).

According to the insurance contract between Steadfast and Camall, the insurer incurs no obligation to disburse proceeds until Camall incurs defense costs or settlement costs. The drug manufacturer has incurred defense costs, which were paid up to the point when the district court ordered the deposit of the interpleader funds. The vendors have also incurred defense costs, which, according to the insurance contract may be payable out of the Steadfast policy. During the hearing before Judge Graves, counsel for the Phen–Fen plaintiffs argued in favor of the turnover, advocating the creation of a segregated fund within the bankruptcy estate to pay future tort claims. However, to date, Camall has not been found liable for any Phen–Fen related injuries, nor have any of those claims been settled. Accordingly, neither Camall, its bankruptcy estate, nor any Phen–Fen plaintiffs have established that the interpleader proceeds are properly payable under the contract to Camall.

If the funds were prematurely turned over to the bankruptcy estate, the vendors would face the peril of losing whatever contract rights they possess. The issue before this court is not the ownership of the proceeds, as Camall seems to argue, but rather in what forum that question should be settled. Accordingly, the appropriate line of inquiry for this court is whether the lower courts abused their discretion in making this determination.

## A. Original denial of the Motion for Turnover

First, Camall claims that the district court erred in affirming the bankruptcy court's decision to deny its motion for turnover. This court reviews a district court's decision for abuse of discretion. A court abuses its discretion when it fails to apply the proper legal standard to a determination. *See Michigan Coalition of Radioactive Material Users, Inv. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991).

■ Here, the bankruptcy court denied the initial motion for turnover on procedural grounds. The Bankruptcy Rules require that a party seeking a turnover file that request as an adversary proceeding rather than as a motion in another bankruptcy proceeding. Bankruptcy Rule 7001. Courts have given effect to Bankruptcy R. 7001 by holding that "a turnover proceeding commenced by motion ... will be dismissed." *In the Matter of Thomas J. Perkins, Jr.,* 902 F.2d 1254, 1258 (7th Cir.1990); *accord, In Re Ace Industries, Inc.,* 65 B.R. 199, 200 (Bankr.W.D.Mich., 1986). Although Camall cites several instances where courts allowed parties to proceed on a mere motion, *see, e.g., Eagle–Picher,* 134 B.R. 248 (Bankr.S.D.Ohio 1991), we are hard-pressed to find that the bankruptcy court abused its discretion by adhering strictly to the rule in this case, and declining to grant an exception.

Moreover, the cases cited by Camall can be distinguished from the facts of this case. *Eagle–Picher* dealt with proceeds of a fifth-layer excess liability policy, where the language of the insurance contract made clear that the policy would pay any claim brought within a certain time period. *See Eagle–Picher,* 134 B.R. at 252. The proceeds in the instant case are not automatically payable, nor is the insurance contract clear that all the proceeds are due to Camall. It may be that under this contract some of the vendors' rights are superior to Camall's. Another case relied upon by Camall presents similarly inapposite facts. *In re Seal,* 192 B.R. 442 (Bankr. W.D.Mich.1996), dealt with a motion for civil contempt for violation of the automatic stay, rather than a motion for turnover. In *Seal,* the property in question was an

automobile, which the debtor had purchased pre-petition, that was repossessed in violation of the automatic stay. Turnover was merely part of the remedy ordered for the violation of the automatic stay. In the case at bar, Steadfast never "repossessed" any property owned by Camall. It merely deposited the remaining policy amount with the district court as ordered.

Similarly, the turnover granted in *In re Miel*, 134 B.R. 229 (Bankr.W.D.Mich.1991), is easily distinguished from the facts at bar. *Miel* dealt with an unintentional violation of the automatic stay by the IRS, which withheld a refund as a set-off against unpaid tax liability. The court again granted turnover as a remedy for the violation of the automatic stay. We can clearly distinguish property in the possession of the debtor taken in violation of a stay from insurance proceeds that may not be yet payable, and may be owing to other insureds.

Proceeding from the general proposition that the bankruptcy court merely followed the Bankruptcy Rules as written, we find no abuse of discretion. It follows that the district court's decision affirming the bankruptcy court stands on similarly solid ground.

### B. Dismissal of the adversary proceeding for turnover

The second issue consolidated in this appeal is whether the bankruptcy court improperly dismissed the subsequent adversary proceeding. Having realized the technical failing of the motion for turnover, Camall filed an adversary proceeding in bankruptcy court, prior to the court's ruling on the motion, requesting the same relief. The bankruptcy court held a hearing on the matter and decided to abstain and dismiss the adversary proceeding in favor of the interpleader filed in federal district court, remarking "it's tough

enough for me to figure out what I'm doing without trying to figure out what my good friend and colleague Judge Cook is doing. But I do know that this is his ball of wax, and the Motion is granted." J.A. at 1014.

The district court affirmed this decision stating that "the issues before this Court [the interpleader action] involve essentially the same claims and the same parties as those in the adversary proceeding. Thus, to have the Bankruptcy Court to entertain and to evaluate and ultimately rule upon the issues in that court would be duplicative and contrary to what, in my opinion, is sound judicial economy." Id. at 1071. The district court also noted "that the matters in this court [interpleaderdeclaratory judgment action] were pending prior to the commencement of the adversary proceeding." Id. Perhaps most significant, the district court reminded the parties that "this Court has plenary jurisdiction over all of the issues and the parties, unlike the Bankruptcy Court." Judge Cook concluded saying, "I do not believe that the decision by the Bankruptcy Court was erroneous. I do not believe that the decision by the Bankruptcy Judge was an abuse of its discretion." Id. We agree.

This circuit has held that a trial court has broad discretion in determining whether to dismiss litigation or abstain in order to avoid duplicative proceedings. *In Re White Motor Credit*, 761 F.2d 270, 274–75 (6th Cir.1985). We review only to determine if that discretion has been abused. *Id.* The term abstention is used by the appellants and the district court to denote the bankruptcy court's decision to dismiss the adversary proceeding while the essentially identical interpleader action proceeded in district court. Although declining to address a claim while that claim is pending before another court mirrors the abstention doctrine articulated in *Younger v.*

*Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), et al., the dismissal of the adversary proceeding is not, in the strict sense, abstention. Rather, it is a decision to dismiss for lack of jurisdiction and we will analyze it as such.

■ The jurisdiction of a bankruptcy court is circumscribed both by statute and by the order of reference of the district court under which it sits. As Judge Cook noted, the district court has plenary jurisdiction to hear this federal issue, regardless of its relation to a bankruptcy proceeding. In this case, we find Judge Graves simply bowed to the superior jurisdiction of the district court in dismissing the adversary proceeding. Judge Graves noted his limitations, as well as the temerity of Camall's unusual request, saying "[y]ou're asking me to undercut a Federal District Judge, I just don't have the brashness to do that." We cannot find an abuse of discretion when a court, cognizant of the limits of its own jurisdiction, refrains from attempting to divest a superior court of jurisdiction over the same matter.

### III. Lifting of the Automatic Stay

■ The decision whether or not to lift the automatic stay resides within the sound discretion of the bankruptcy court. *In re Laguna Associates, Ltd. Partnership,* 30 F.3d 734, 737 (6th Cir.1994); *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1286 (2d Cir.1990). Accordingly, this court reviews the question for an abuse of discretion. Camall alleges that the bankruptcy court, and subsequently, the district court, erred in lifting the stay because such action will allow "a chaotic and uncontrolled scramble for the Debtor's assets in a variety of uncoordinated different courts." Appellant's Reply Brief at 7. They also argue that allowing the interpleader action to proceed "[will] pay some of Camall's unsecured creditors ahead of others-at one hundred cents on the dollar,"

thus running "roughshod over the pro-rata distribution scheme for creditors of the same class embodied in the Bankruptcy Code." Appellant's Brief at 20. Camall makes various other references to "a race to the courthouse," created by the removal of the stay.

■ We find these arguments unpersuasive. First, in regard to the "race to the courthouse," Steadfast and the vendors had filed the declaratory action in state court, removed the matter to federal court, and deposited the interpleader proceeds before Camall filed for bankruptcy. In other words, Steadfast and its vendors were well down the track before Camall fired the starting gun. The "race to the courthouse" and "chaotic scramble" analogies are even more ludicrous when one considers that many of the vendors seeking proceeds from Steadfast *are not actually creditors* of Camall. Camall acknowledges that some of the vendors' claims have already been disallowed by the bankruptcy court. The record is unclear on the subject matter of these claims, and whether they were related to personal injury liability, but it seems likely that the only reason the vendors filed claims in the Chapter 11 proceeding is to protect their rights under the insurance contract. If they had not filed claims, and Camall succeeded in obtaining the turnover, the vendors would have no venue in which to press their claims.

From the facts, Camall asks the court to draw the counter-intuitive conclusion that the disallowance of these claims transforms the vendors' prior claims against a third-party insurer into a "core bankruptcy proceeding." The bankruptcy and district courts rightly rejected this argument.

Camall also cites this circuit's opinion in *In re Dow Corning,* 86 F.3d 482 (6th Cir. 1996) for the proposition that the interpleader is a "core proceeding" and should

be heard in bankruptcy court, and that turnover is the proper method for placing the issue before the bankruptcy court. While it appears that under the *Dow* cases, the bankruptcy court could have jurisdiction because the controversy is "related to" the bankruptcy, *see Dow*, 86 F.3d at 489–90 (discussing congressional intent to allow bankruptcy courts broad jurisdiction over "related to" matters), we find no language in *Dow* that would *require* the bankruptcy court to take over the case when another court of competent (not to mention superior) jurisdiction is already entertaining the dispute. The facts of *Dow* also differ greatly from the instant case. *Dow* involved transferring a vast number of tort claims to the district court, which was also hearing the bankruptcy proceeding. In contrast, the case at bar deals with a declaratory judgment action between insureds to determine what portion of the proceeds are owing to the bankruptcy estate, rather than how monies ought to be divided among tort claimants.

It is also clear that unless we adopt Camall's circular argument and find that the interpleader proceeds are automatically property of the estate, the declaratory judgment action does not meet the statutory definition of a core proceeding set forth in 28 U.S.C. § 157(b)(2). Nor does the Debtor explain, regardless of whether the proceeding is core, or non-core, under what authority the bankruptcy court can divest the Federal District Court of its plenary jurisdiction.

After wading through the numerous peripheral issues raised by Camall, we conclude that this appeal turns on whether there is any basis for finding that allowing the interpleader action to continue constitutes an abuse of discretion. The bankruptcy court based its ruling on the "interest of judicial economy, the necessity of having the broadest, possible jurisdiction over all the competing interests in this case, the preservation of that, which may or may not be [an] asset of the estate for all claimants." This court has defined an abuse of discretion as "a definite and firm conviction that the trial court committed a clear error of judgment." *See Hamlin v. Charter Township of Flint*, 181 F.R.D. 348, 350 (E.D.Mich.1998). Allowing the district court to proceed with the interpleader action in order to ascertain what portion of the proceeds belong to the bankruptcy estate prior to determining the payment of creditors seems eminently reasonable. We find no abuse of discretion.

## IV.

For the foregoing reasons, the order of the district court is AFFIRMED and we REMAND this case to the District Court for further proceedings not inconsistent with this opinion.