## In re YOUNGSTOWN OSTEOPATHIC HOSPITAL ASSOCIATION, Debtor.

### Youngstown Osteopathic Hospital Association, Plaintiff,

v.

### James V. Ventresco, Jr., D.O., et al., Defendants.

Bankruptcy No. 99–40663.
Adversary No. 01–4059.

United States Bankruptcy Court, N.D. Ohio.

Jan. 4, 2002.

William E. Schonberg, Richard C. Haber, Cleveland, OH, Beth A. Slagle, Richard T. Victoria, Pittsburgh, PA, David C. Comstock, Youngstown, OH, Patrick J. Keating, Philip R. Wiese, Akron, OH, Jon A. Van Steenis, Mandeville, LA, for debtor.

Timothy M. Reardon, Youngstown, OH, Richard K. Stovall, Columbus, OH.

Ira Bodenstein, Cleveland, OH, United States Trustee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the order of the District Court referring back to this Court for disposition the June 8, 2001 motion of Debtor/Plaintiff Youngstown Osteopathic Hospital Association ("YOH") to enforce the automatic stay against Ohio Hospital Insurance Company ("OHIC") pursuant to 11 U.S.C. § 362.

### I. PROCEDURAL HISTORY

YOH filed a Chapter 11 petition for bankruptcy protection on March 11, 1999. On March 9, 2001, YOH filed an adversary complaint against former officers and directors, members of the Board of Trustees and management of YOH. The complaint alleges breaches of fiduciary duties, negligence, negligent hiring, supervision and retention, fraud, fraudulent transfers, misappropriation, conspiracy, misrepresentation and civil RICO counts. Defendants have filed answers, including jury demands. Defendant White filed a Rule 12(b)(6) motion to dismiss and a Rule 12(b)(7) motion to dismiss for failing to add an indispensable party pursuant to FED. R. CIV. P. 19. YOH filed memoranda in opposition to each of the motions to dis-

miss, and Defendant White filed reply memoranda to each.

In addition, on June 8, 2001, YOH filed a motion ("Motion") seeking enforcement of the automatic stay against OHIC, which issued directors' and officers' liability insurance to YOH. Defendants filed a brief in opposition to YOH's Motion seeking enforcement of the automatic stay. YOH filed a reply in support of its Motion to enforce the automatic stay against OHIC.

## II.  JURISDICTION

The adversary complaint filed on March 9, 2001 includes a number of claims which are not core proceedings. Additionally, the civil RICO claim requires consideration of both Title 11 and other laws of the United States passed pursuant to the authority of the commerce clause. Finally, certain of the causes of action entitle parties to a jury trial. Upon consideration of the foregoing, the Court concluded that for reasons set forth in 28 U.S.C. § 157, this action must be tried before the United States District Court for this District. Having so concluded, the Court transmitted this case to the District Court on September 10, 2001.

On October 18, 2001, the District Court ordered that this Court was in the best position to rule on YOH's June 8, 2001 Motion. Therefore, YOH's June 8, 2001 Motion is to be determined in this forum.

A hearing was not held as the parties agreed the Court should consider the Motion on the papers filed. The June 8, 2001 Motion is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(G) and the District Court referral order dated October 18, 2001. The following represents the Court's findings of fact and conclusions of law pursuant to Fed R. Bankr. P. 7052.

## III.  DISCUSSION

### A.  *Facts*

YOH filed a complaint against its directors which alleges breaches of fiduciary duties, negligence, negligent hiring, supervision and retention, fraud, fraudulent transfers, misappropriation, conspiracy, misrepresentation and civil RICO counts. Some of these claims may potentially be covered by YOH's directors' and officers' liability policy ("D & O Policy"), issued by OHIC.

The named insured on the D & O Policy is YOH, and the D & O Policy is a claims made policy. (YOH's Memorandum of Law in Support of YOH's Petition to Enforce Automatic Stay Against OHIC, Exhibit 1 at 1.) It states:

I.  Insuring Clause:

The Company named on the Declarations page (a stock insurance corporation, herein called the Insurer) in consideration of the payment of the premium and subject to all of the terms, conditions and limitations of this policy, agrees as follows:

    (a) With the Directors, Officers and Trustees of the Named Insured that if during the policy period any claim or claims are first made against the Directors, Officers and Trustees, individually or collectively, for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Directors, Officers and Trustees, all loss which the said Directors, Officers and Trustees shall become legally obligated to pay.

    (b) With the Named Insured that if during the policy period any claim or claims are made against the Directors, Officers and Trustees, individually or collectively, for a

Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Named Insured all loss for which the Named Insured may be required or permitted by law to indemnify such Directors, Officers and Trustees.

(YOH's Memorandum of Law in Support of YOH's Petition to Enforce Automatic Stay Against OHIC, Exhibit 1 at 5.) The total amount of coverage available under the D & O Policy is Five Million Dollars ($5,000,000.00). (YOH's Memorandum of Law in Support of YOH's Petition to Enforce Automatic Stay Against OHIC, Exhibit 1 at 1.)

### B. *Issue and Arguments*

The issue before the Court is whether OHIC may make payments under the D & O Policy to Defendants without violating the automatic stay. If the D & O Policy proceeds are property of YOH's estate, then any payment OHIC makes to Defendants is in violation of the automatic stay. If the D & O Policy proceeds are not property of YOH's estate, then Defendants may receive the payments. The Court must determine whether the D & O Policy proceeds are property of YOH's estate in order to decide whether the D & O Policy payments violate the automatic stay.

YOH argues that the D & O Policy is property of its estate and that any proceeds from the D & O Policy should be included as property of its estate. YOH argues that any payments made under the D & O Policy by OHIC for litigation defense costs on behalf of the directors are prohibited by virtue of the automatic stay. Because the D & O Policy is a claims made policy, any payment made to Defendants directly reduces the total amount of coverage available to YOH. To support its argument, YOH sets forth two conclusions.

First, the D & O Policy proceeds fall within the broad definition of property of the estate. Second, YOH has a pecuniary interest in the liability proceeds available under the D & O Policy.

Defendants argue that the allegations made by YOH in its complaint against Defendants are covered by the D & O Policy and should be paid because Defendants own the proceeds. Defendants conclude that the D & O Policy proceeds are not a part of YOH's estate, and the payment of litigation defense costs is not a violation of the automatic stay.

### C. *Applicable Law*

The automatic stay provision of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3).

■ Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate is to be construed broadly. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515, 521 (1983).

The Sixth Circuit Court of Appeals has not decided the issue of whether the proceeds of a D & O policy are property of the debtor's estate.

#### 1. *Prevailing View*

The prevailing view is that an insurance policy is property of the estate pursuant to 11 U.S.C. § 541(a)(1) and protected by the automatic stay provision in 11 U.S.C. § 363(a)(3). "Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction." *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 92 (2nd Cir.1988). The Fourth Circuit has

stated, "[u]nder the weight of authority, insurance contracts have been said to be embraced in this statutory definition of 'property.'" *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 1001 (4th Cir.1986) *(citing In re Davis*, 730 F.2d 176, 184 (5th Cir.1984)). The insurance policy at issue in *A.H. Robins* was a products liability policy that insured the debtor against claims by consumers. *A.H. Robins*, 788 F.2d at 1001.

The Ninth Circuit adopted the reasoning in *A.H. Robins* and applied it to an insurance policy that insures the debtor against claims by officers and directors. *The Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re The Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 519 (9th Cir.1986). The court stated that the insurance policies met the "fundamental test of whether they are 'property of the estate' because the debtor's estate is worth more with them than without them." *Id.*

### 2. *Direct Interest and Right to Receive and Keep Test*

Courts have held, however, that if a debtor does not have a direct interest in the proceeds of the insurance policy, the insurance proceeds are no longer property of the debtor's estate. *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1394 (5th Cir.1987).

In *Louisiana World Exposition*, a creditors' committee sued various directors and officers of Louisiana World Exposition, Inc. for malfeasance and mismanagement. The creditors' committee also sued the insurer on behalf of the estate. The creditors' committee sought an injunction against the insurer and enforcement of the automatic stay to prohibit payments of the directors' and officers' legal expenses. The policy at issue included director and officer liability and corporate reimburse-ment coverage with a single liability limit of Twenty Million Dollars ($20,000,000.00). *La. World Exposition, Inc.*, 832 F.2d at 1394. The creditors' committee argued that if it wins its suit against the directors and officers, then it becomes entitled to the liability proceeds which will have been diminished due to the directors' and officers' legal expenses.

The Fifth Circuit distinguished between ownership of the policy and ownership of the proceeds. The Fifth Circuit ruled that "the proceeds of the liability coverage afforded the [Louisiana World Exposition, Inc.] directors and officers are not property of the [Louisiana World Exposition, Inc.] bankruptcy estate." *Id.* The court noted that the insurance claim at issue was the directors' and officers' liability coverage, not the indemnification coverage, so the policy proceeds then belong to the directors and officers. *Id.* at 1399. "The fact that [Louisiana World Exposition, Inc.] purchased the policies does not change the outcome.... The question is not who owns the policies, but who owns the liability proceeds. Although the answer to the first question quite often supplies the answer to the second, this is not always so ...." *Id.* Even though Louisiana World Exposition, Inc. purchased the insurance policy, the policy was for the benefit of the directors and officers.

Since the debtor's estate did not have an interest in the insurance proceeds, the insurance proceeds did not fall within the scope of the automatic stay provision in 11 U.S.C. § 363(a)(3).

The Fifth Circuit clarified the definition of when insurance proceeds are property of the debtor's estate in *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir.1993). In *Edgeworth*, after a debtor physician was granted a Chapter 7 discharge, relatives of a former patient sought approval to file a medical malprac-

tice suit in state court. *Id.* at 53. The court held that although the debtor's liability policy was a part of the debtor's estate, "the proceeds of that policy were not." *Id.* at 56. In reaching this conclusion, the court stated that "[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *Id.* at 55. The court continued, "[i]n other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate." *Id.* at 56 (footnote omitted). As in *Louisiana World Exposition,* the debtor had neither a direct interest in, nor a right to receive and keep, the insurance proceeds.

### 3. *Insurance Proceeds as Property of YOH's Estate*

Some courts have distinguished *Louisiana World Exposition* and have found insurance proceeds to be property of the debtor's estate. In *In re Sacred Heart Hospital of Norristown,* 182 B.R. 413, 419 (Bankr.E.D.Pa.1995), the court found that since the directors' and officers' insurance policy provided liability coverage to the debtor itself, the proceeds were property of the debtor's estate. The court stated, "[p]roceeds available for the [d]ebtor's liability exposure are not segregated from the [p]roceeds available to the directors and officers. Thus, the [d]ebtor is indeed an insured and has a sufficient interest in the [p]roceeds as a whole to bring them into the estate." *Id.* at 420. The court, however, did not quote the relevant language from the insurance policy. It is unclear whether the court is referring to indemnity coverage or entity coverage, which covers the corporation's own losses. The court's holding is more consistent with precedent if it is construing entity coverage. Entity coverage insures the liability of the corporation itself. The court in

*Sacred Heart* thus distinguished *Louisiana World Exposition* based on the liability coverage provided to the debtor.

Another court distinguished *Louisiana World Exposition* based on its focus of liability rather than indemnification coverage. *Circle K Corp. v. Marks (In re Circle K Corp.),* 121 B.R. 257, 260 (Bankr.D.Ariz. 1990). In *Circle K,* the debtor requested a preliminary injunction against continued litigation of securities fraud actions against the debtor, its officers and directors. *Id.* at 258. The court found that the debtor's insurance polices, which provided liability coverage for the debtor's officers and indemnification coverage for the debtor, were property of the debtor's estate. *Id.* at 261. The court reasoned that the insurance policies, which covered reimbursement to the debtor of the officers' litigation expenses, would become depleted through the ongoing litigation, and the debtor's exposure in other litigation would increase as the policy limits were exhausted. *Id.*

The court stated, however, that plaintiffs in the securities fraud actions would not be permanently deprived of their right to seek redress, and that litigation could proceed. *Id.* at 262. In *Circle K,* the debtor had a claim to reimbursement under the policy for amounts paid as indemnification to the directors and officers. *Id.* at 260. There was no such claim for reimbursement in *Louisiana World Exposition.*

The court in *In re The Leslie Fay Companies, Inc.,* 207 B.R. 764 (Bankr.S.D.N.Y. 1997) also distinguished *Louisiana World Exposition.* In *Leslie Fay,* the shareholders brought a class action lawsuit against the directors and officers, and there was also a stockholder derivative action pending against the directors and officers. *Id.* at 768. The directors and officers tried to settle the class action lawsuit using part of

the proceeds from their directors' and officers' single-limit policy. *Id.* at 786. The court held that as long as there was a pending derivative action, the debtor would have an "interest in any insurance proceeds available as a result of its officers' or directors' wrongful acts." *Id.* at 785 (footnote omitted). The reason the debtor has an interest in the proceeds is "because of the possibility that the class action might deplete the policy and theoretically force claims for indemnification to fall upon the estate." *Id.* at 785. The court, however, also found that the "intended beneficiaries of the policy are both the individuals and the corporation, and not solely the corporation." *Id.* at 786. As such, the directors and officers could still claim a substantial portion of the insurance proceeds.

## IV. ANALYSIS

█ This Court is persuaded by the language from *Ochs v. Lipson (In re First Central Financial Corp.),* 238 B.R. 9, 13 (Bankr.E.D.N.Y.1999) which explains the purpose of directors' and officers' policies.

D & O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose. There is an important distinction between the individual liability and the reimbursement portions of a D & O policy. The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation. Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D & O policy. It is insured indirectly for its indemnification obligations. In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.

*Id.* at 16.

It is this language and the language of YOH's insurance policy itself that lead this Court to conclude that the proceeds of the D & O Policy at issue are not property of YOH's estate.

While the Sixth Circuit Court of Appeals has not decided the issue of whether the proceeds of a D & O policy are property of the debtor's estate, it has held that a "'[d]ebtor's right to turnover of the insurance policy's proceeds ... is limited by the contractual provisions within that policy.'" *Camall Co. v. Steadfast Insur. Co. (In re Camall Co.),* Nos. 99–2198, 99–2504, 16 Fed.Appx. 403, 406–07, 2001 WL 897441, at *2, 2001 U.S.App. LEXIS 17243, at *12 (6th Cir. July 31, 2001) (*citing Jones v. GE Capital Mortgage Co. (In re Jones),* 179 B.R. 450, 455 (Bankr.E.D.Pa.1995)).

The contractual provisions within YOH's insurance policy include director and officer liability coverage and indemnity coverage. (YOH's Memorandum of Law in Support of YOH's Petition to Enforce Automatic Stay Against OHIC, Exhibit 1 at 5.) There is no entity coverage.

While YOH is the named insured on the policy, the policy is for the benefit of the directors and officers. Here, YOH does own the policy, but it does not own the proceeds at issue. Defendants have made a claim under the D & O Policy. Defendants are entitled to those proceeds.

YOH's argument that it has a pecuniary interest in the D & O Policy is without merit in the instant case because there has been no claim made against the indemnity coverage. YOH has not paid any of Defendants' defense costs, and so it is not entitled to be reimbursed. Nor does YOH have entity coverage with OHIC. Entity

coverage would directly insure YOH. This Court makes no legal conclusions regarding entity coverage, other than to find that YOH had none and that the existence of entity coverage could change this Court's analysis.

The instant case is unlike *Sacred Heart* because there is no liability coverage for YOH. YOH only has indemnity coverage. Nor is the instant case like *Circle K*, as the debtor corporation in *Circle K* had an indemnity claim. YOH does not have a claim for indemnification. It is the lack of an indemnity claim, or even the possibility of one, that also distinguishes the instant case from *Leslie Fay*. The class action lawsuit in *Leslie Fay* left open the possibility that the debtor may be saddled with indemnity claims. There is no such fear in the instant case.

The case before the Court is indistinguishable from *Louisiana World Exposition*. The only difference between the two cases is that the named insureds in *Louisiana World Exposition* were the directors and officers themselves, whereas in the instant case, YOH is the named insured. This difference is irrelevant because the D & O Policy is for the benefit of the directors and officers, regardless of whom the named insured may be.

Therefore, the Court finds, for the foregoing reasons, that while YOH's insurance policy in general is property of YOH's estate, the D & O Policy proceeds are not property of YOH's estate. Any payments OHIC makes to Defendants pursuant to their claim under the D & O Policy is not in violation of the automatic stay. YOH's Motion is overruled.

Pursuant to the District Court's October 18, 2001 order, the Clerk shall promptly transmit this case file back to the Clerk of the United States District Court for this District for further proceedings according to law.

An appropriate order shall enter.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion entered this date, the Court finds that while YOH's insurance policy in general is property of YOH's estate, the D & O Policy proceeds are not property of YOH's estate. Any payments OHIC makes to Defendants pursuant to their claim under the D & O Policy is not in violation of the automatic stay. YOH's June 8, 2001 Motion is overruled.

Pursuant to the District Court's October 18, 2001 order, the Clerk shall promptly transmit this case file back to the Clerk of the United States District Court for this District for further proceedings according to law.

**IT IS SO ORDERED.**