**In re MCSi, INC., Securities Litigation.**

No. C–3–03–015.

United States District Court,
S.D. Ohio,
Western Division.

July 5, 2007.

DECISION AND ENTRY SUSTAINING FULLER & THALER ASSET MANAGEMENT, INC.'S MOTION TO MODIFY CERTAIN ORDERS TO PERMIT THE RELATED ACTIONS TO PROCEED AS TO THE INDIVIDUAL DEFENDANTS (DOC. # 19), SCHEDULING CONFERENCE TO BE SET BY SEPARATE ENTRY

RICE, District Judge.

This matter encompasses seven consolidated class action lawsuits (the "Related Actions") filed against MCSi, Inc. ("MCSi"), and two individual Defendants, Michael E. Peppel ("Peppel") and Ira H. Stanley ("Stanley"). MCSi provides integrated technical services and audio-visual presentation, broadcast and computer technology products. Peppel was, throughout the class period, MCSi's Chief Executive Officer, President and Chairman of the Board. Stanley was, throughout that period, MCSi's Chief Financial Officer

and Vice President. The individual lawsuits, filed between January 17, 2003, and March 28, 2003, each allege that Defendants violated federal securities laws by, *inter alia*, issuing false and misleading statements regarding MCSi's financial condition and failing to disclose material information, which allegedly defrauded purchasers of MCSi stock.[1] MCSi announced Peppel's resignation as Chairman of the Board of Directors on March 6, 2003, and announced his resignation as the President, CEO and a Director on March 12, 2003. Further, it announced Stanley's resignation as both Chief Financial Officer and a Director of the Company on April 4, 2003. Finally, on June 19, and June 20, 2003, counsel for MCSi notified the Court of the Company's voluntary Chapter 11 petition for reorganization in the Bankruptcy Court for the District of Maryland (Doc. # s 15 and 16). Pursuant to 11 U.S.C. § 362(a)(1), the proceedings in this matter were automatically stayed. The automatic stay is considered one of the fundamental protections provided by the bankruptcy laws. *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984) (indicating that the automatic stay represents the congressional intent to "permit the debtor to organize his or her affairs without creditor harassment and to allow orderly resolution of all claims"). This court has jurisdiction over this federal securities suit pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

Pending now before the Court is the Motion of Fuller & Thaler Asset Management ("Fuller & Thaler") to Modify Certain Orders to Permit the Related Actions to Proceed as to the Individual Defendants (Doc. # 19). Specifically, Fuller & Thaler requests that the Court remove the stay of proceedings as to the non-debtors, the individual Defendants.

The § 362(a)(1) automatic stay is generally considered to be available only to the debtor, and not to third-party solvent defendants. To be sure, " 'it would distort congressional purpose to hold a third[-]party solvent co-defendant should be shielded against his creditors by a device intended for the protection of the insolvent debtor' and creditors thereof." *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th Cir.1983), *quoting* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 340 (1978), U.S.Code Cong. & Admin.News 1978, p. 5963. However, while there are cases under § 362(a)(1) where a court may properly stay the proceedings against non-bankrupt co-defendants, such a measure is justified only in "unusual circumstances." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir.2000), *cert. denied*, 533 U.S. 951, 121 S.Ct. 2594, 150 L.Ed.2d 752 (2001). The pioneering decision regarding such "unusual circumstances" indicates that said circumstances arise when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Company, Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986). Courts interpreting this directive have stayed actions against non-debtor co-defendants "where they have found that the bankrupt estate would be adversely affected because the creditor's action would prevent the non-debtor from contributing funds to the reorganization, or would consume time and energy of the non-debtor that would otherwise be devoted to a reor-

---

1. Pursuant to the joint stipulation of the parties, the Court has ordered that class members Fuller & Thaler Asset Management and Paul Bykowski shall be appointed as lead plaintiffs (Doc. # s 29–30).

ganization effort." *Gray v. Hirsch,* 230 B.R. 239, 243 (S.D.N.Y.1999), *quoting In re United Health Care Org.,* 210 B.R. 228, 232 (S.D.N.Y.1997).

At the outset, it is significant to note that MCSi itself has not opposed lifting the stay of bankruptcy as to Stanley and Peppel. Instead, only Stanley and Peppel urge the Court not to remove the stay as to them. Arguably, insofar as the bankruptcy stay is designed to protect the debtor, it can be inferred, at the very least, that if MCSi perceived its bankruptcy estate would be jeopardized by the progression of proceedings against its former directors and officers, it would have weighed in on the matter. Furthermore, as Fuller & Thaler points out (Doc. # 28 at 7–8), nearly all of the cases cited by Stanley and Peppel where the bankruptcy stay was extended to a non-debtor defendant (and, to be sure, nearly all of the reported cases to address the issues herein) involve a situation where the extension of the stay as to the non-debtor was requested by the debtor and not by the non-debtors, as is the case here.

*A.H. Robins* indicated that "[a]n illustration of such [unusual circumstances] would be a suit against a third[ ]party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." 788 F.2d at 999. In such a situation, a judgment against a party to whom the debtor is bound to indemnify would essentially be a judgment against the debtor and would therefore frustrate the legislative intent to protect the bankrupt estate from creditors. Pointing to the existence of a limited indemnification duty imposed by MCSi's by-laws and its Articles of Incorporation, as well as by Maryland Corporations and Associations Law,[2] Stanley and Peppel both insist that this case qualifies as such an unusual circumstance (Doc. # 25 at 6–9; Doc. # 26 at 7–8).

In response, Fuller & Thaler argues that the illustration provided by *A.H. Robins* involved a non-debtor defendant entitled to *absolute* indemnity, whereas here, Stanley and Peppel, by their own admission, are entitled only to *limited* indemnity from MCSi (Doc. # 28 at 10). As Fuller & Thaler suggests, Stanley and Peppel would not be entitled to indemnification, for example, for acts or omissions committed in bad faith, or as a result of active and deliberate dishonesty (*Id.*). The relevance of this distinction is apparent when analyzed in the context of the nature of allegations made against Stanley and Peppel. *See* Complaint ¶¶ 19–59. Other courts to consider whether a non-debtor defendant should be afforded the protection of the bankruptcy stay have taken note of the type of suit in determining whether such defendants should benefit from the powerful shield of the automatic stay. One court, for example, compared the securities action at issue before it with a products liability action and noted that unlike products liability suits, where a suit against a corporate officer is effectively a suit against the corporation itself, a claim under the securities laws allows for the independent liability of officers in which the proceedings may progress without the participation of the corporation. *Duval v. Gleason,* 1990 WL 261364, at *4 (N.D.Cal. Oct.19, 1990). To be sure, as Fuller & Thaler points out (Doc. # 28 at 13), under the relevant federal securities laws, Peppel and Stanley face the prospect of joint and several liability. *See* 15 U.S.C. § 78u–4(f)(2). Given this possibility of Stanley and Peppel's liability independent of that of MCSi, it would be unfair to MCSi's

---

**2.** MCSi is incorporated under the laws of the     state of Maryland.

creditors to extend the protection of MCSi's stay in bankruptcy to them.[3]

Stanley and Peppel, on the other hand, argue that no such possibility for independent liability exists. Peppel asserts that he and Stanley, far from having sole control of MCSi, were "merely two of several directors and/or officers in a position to control the acts of the corporation" (Doc. # 26 at 12). Further, Peppel distinguishes *Duval* by pointing out that in that case, the non-debtor defendants were current directors and officers of the debtor, thus justifying the court's reluctance to extend the automatic stay to actions against individuals who were in a position to cause the debtor to file bankruptcy and therefore protect themselves from the securities actions (*Id., citing Duval,* 1990 WL 261364 at *4). Peppel reasons that, since he severed his positions with MCSi "some three months before the corporation filed its Chapter 11 petition," the risk that he exploited the bankruptcy stay for his own benefit and protection is non-existent (*Id.*). Yet, this is not necessarily the case, and Peppel's argument is a distinction without a difference. Even given the apparent impossibility of Peppel's causing MCSi to file for bankruptcy, *Duval's* concern about the creation of a loophole for malfeasant corporate officers still applies. In other words, even if Peppel and Stanley truly did not cause MCSi to file for bankruptcy, such does not alleviate the possibility that extending the bankruptcy stay to them would work a substantial end-run around the general rule that only insolvent defendants may claim the benefits of the § 362(a)(1) automatic stay.

Stanley, too, insists that his and Peppel's alleged wrongdoings occurred within the scope of their duties as directors and/or officers of MCSi. To that end, he relies heavily on *Lomas Financial Corp. v. Northern Trust Co.,* 117 B.R. 64 (S.D.N.Y. 1990), wherein the District Court upheld the Bankruptcy Court's extension of the bankruptcy stay to non-debtor officers accused of violations of federal securities laws, because it determined that the corporate defendant's obligation to indemnify officers for all legal claims arising out of acts performed in their capacity as officers of the corporation amounted to the type of unusual circumstance contemplated by *A.H. Robins.* At bottom, however, the Court in *Lomas* was concerned that permitting the suit to continue as to the non-debtor Lomas officers would severely and adversely impact the reorganization of the bankruptcy estate. Notably, a close reading of *Lomas* suggests that the Court's foremost concern was that subjecting the non-debtor defendants to immediate suit would impair the corporate defendant's reorganization due to the fact that the individual defendants were continuing in their positions with the corporation and, in fact, played vital roles in developing the reorganization plan. *Lomas,* 117 B.R. at 66–67 (noting that one of the individual Defendants devoted in excess of 50% of his time to chairing the corporation's reorganization task force and that the other individual Defendant was a "key staff member" of said task force). By contrast, as indicated *supra,* neither individual Defendant here still is associated with MCSi, meaning that, from a personnel standpoint of the sort that motivated the court in *Lomas,* no such detrimental impact on the debtor's reorganization efforts would be possible, should the actions against Peppel and Stanley progress at this time.

---

**3.** The possibility of independent liability of the individual Defendants seems particularly apparent, given that Claim Two in Plaintiffs' Complaint alleges a violation of Section 20(a) of the Securities Act against the individual Defendants only, and not MCSi.

■ To that end, focusing on whether alleged wrongdoings occurred within the scope of Stanley's and Peppel's employment obscures the true inquiry of whether lifting the stay as to them would hamper MCSi's reorganization efforts. Furthermore, even assuming *arguendo* that Stanley and Peppel did act within the scope of their employment and therefore would be indemnified by MCSi, there is still genuine doubt as to what effect, if any, such would have on the bankruptcy estate. Specifically, as both Stanley and Peppel point out, MCSi holds Directors and Officers ("D & O") liability insurance, which would cover any judgments against them (Doc. # 25 at 9; Doc. # 26 at 10–11). Defendants argue that, insofar as the policies constitute property of the debtor, the proceedings as to them should be stayed because the paying out on MCSi's insurance policy in the event of a judgment against Stanley and/or Peppel would have a detrimental effect on the bankruptcy estate.[4] Stanley and Peppel acknowledge, however, that courts are sharply divided as to whether the proceeds of such insurance policies constitute property of the estate. Some decisions have reasoned that such policies are rightly considered property of the estate because they "protect against diminution of the value of the estate." *In re Minoco Group of Companies, Ltd.,* 799 F.2d 517, 519 (9th Cir.1986). This view, however, requires a somewhat attenuated prediction of when and how a hypothetical diminution of value becomes an actual diminution in value. The Court finds the proposition that proceeds of a D & O liability policy are *not* the property of the debtor to be the more persuasive option because it agrees that

> [t]he overriding question when determining whether insurance proceeds are property of the estate is whether the

debtor would have a right to receive and keep those proceeds when the insurer paid on the claim. When a payment by an insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.

*In re Sunbeam Securities Litigation,* 261 B.R. 534, 537 n. 2 (S.D.Fla.2001), *citing In re Scott Wetzel Services, Inc.,* 243 B.R. 802, 804 (Bankr.M.D.Fla.1999). *See also In re La. World Exposition, Inc.,* 832 F.2d 1391 (5th Cir.1987) (holding that if a debtor does not have a direct interest in the proceeds of the insurance policy, the insurance proceeds are no longer property of the debtor's estate). Further, a recent unpublished decision of the Sixth Circuit lends support for this view. In *In re Camall Co.,* 16 Fed.Appx. 403 (6th Cir. 2001), the Court held that, in an interpleader action, a debtor did not have the right to the turnover of insurance policy proceeds. Specifically, it reasoned that "a '[d]ebtor's right to turnover of the insurance policy's proceeds ... is limited by the contractual provisions within that policy.'" 16 Fed.Appx. 403 at 406–407, *quoting In re Jones,* 179 B.R. 450, 455 (Bankr.E.D.Pa. 1995). In the policy at stake in that case, the insurer incurred no obligation to disburse proceeds until the insured incurred costs. Defendants here have provided no indication that MCSi's D & O liability policy operates in a way other than to pay out proceeds only when liability is incurred by a director or officer. In fact, it is difficult to imagine any type of D & O liability policy that would permit the corporation to maintain ownership of the proceeds, as opposed to paying them directly to the successful plaintiff in an action against a

---

4. Peppel, for example, advances a sort of limited fund argument, wherein he suggests that if he were found liable and entitled to seek recovery under the policies, such would diminish the limits available for MCSi in subsequent proceedings (Doc. # 26 at 11 n. 3).

director or officer. The bottom line is that any proceeds of MCSi's D & O liability policy cannot be considered to inure to its pecuniary benefit and therefore may not rightly be considered property of the bankruptcy estate. The Court agrees with Fuller & Thaler that "D & O [liability] insurance and indemnification go hand in hand" (Doc. # 28 at 11), and points out that, even assuming *arguendo* that Stanley and Peppel are correct regarding indemnification, they still have not persuaded the Court that the insurance proceeds required by the indemnification clause to be paid in the event of liability constitute property of the estate. Without demonstrating the risk of harm to the debtor estate, Stanley and Peppel are not deserving of the benefits of the bankruptcy stay.

Next, Stanley argues that, should the proceedings progress as to him and Peppel, there exists a risk that MCSi may be collaterally estopped from litigating certain issues when the proceedings re-commence as to it (Doc. # 25 at 10), once the company emerges from reorganization. Although Stanley correctly cites decisions of other courts that have noted the collateral estoppel effect that would likely result from lifting the bankruptcy stay as to non-debtor co-defendants, *id.*, citing *In re American Film Techs., Inc.*, 175 B.R. 847 (Bkrtcy.D.Del.1994); *In re Sudbury, Inc.*, 140 B.R. 461 (Bkrtcy.N.D.Ohio 1992); *In re Ionosphere Clubs, Inc.*, 111 B.R. 423 (Bkrtcy.S.D.N.Y.1990), this concern has never been the sole justification for extending the stay as to such co-defendants. This should scarcely be surprising, given the general inevitability of common issues arising as to co-defendants in a lawsuit with common causes of action as to the various co-defendants. More notable is the fact that in each of the cases cited by Stanley, the bankrupt defendant was the

litigant asserting the potential unfairness of the collateral estoppel effect of allowing proceedings to progress as to its co-defendant(s). Here, MCSi has declined to urge any such potential unfairness and its silence is deafening. As such, the Court is not persuaded by Stanley's collateral estoppel argument.

Lastly, Peppel asks the Court to exercise its inherent authority to stay the proceedings in the interests of judicial economy (Doc. # 26 at 13–15). As Fuller & Thaler notes, though, the Sixth Circuit has already rejected this argument, remarking that "any duplicative or multiple litigation which may occur is a direct by-product of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned." *Lynch v. Johns–Mansville Sales Corp.*, 710 F.2d 1194, 1199 (6th Cir.1983). The Court simply echoes the Sixth Circuit's sentiment and rejects this argument as a reason to extend the bankruptcy stay as to Stanley and Peppel. Accordingly, the Motion to Modify Certain Orders to Permit Related Actions to Proceed as to the Individual Defendants (Doc. # 19) is sustained.

A telephone scheduling conference to determine a trial date and other dates leading to resolution of Plaintiffs' claims as to the individual Defendants will be set by separate entry.